## Case No. 4,752.

### FERSON v. SANGER et al.

[1 Woodb. & M. 138.][1]

Circuit Court, D. Maine. May Term, 1846.

[1] [Reported by Charles L. Woodbury, Esq., and George Minot, Esq.]

Fessenden & Dublois, for complainant.
Ch. Davies & Son, for respondents.

WOODBURY, Circuit Justice. A preliminary question in this case is an objection to the competency of John Webber as a witness. He signed the notes as surety to the complainant, and is averred to have made the bargain and been at first interested in the

land in dispute. But he has been released by Ferson, so as not to be liable to contribution, and has himself released Ferson from any liabilities to him, and the holder of the notes has covenanted not to sue Webber thereon. This covenant, if Webber was the only promisor, might in equity be deemed tantamount to a release, and operate as such, and thus prevent any interest in Webber in this case to get rid of any suit whatever on the notes, and run no risk and incur no trouble in afterwards attempting to recover the amount in a separate action on the covenant. This is often the doctrine at law as well as in equity, if it be the case of a sole promisor, and the covenant be never to sue him. But such a covenant is not construed as a release, if it be not to sue during only some given or specified time; because, if deemed a release during that time, it must be so forever; as a demand once released is always released. On these two points, see 1 Durn. & E. [Term R.] 446; 8 Durn. & E. [Term R.] 486; Salk. 673; 19 Johns. 129; 16 Mass. 24; 6 Mass. 105; 2 Johns. 473; Hob. 10; 15 Mass. 112; 2 Saund. 48a, note; 8 Johns. 54. And more especially is it the reasonable doctrine in equity as well as law in a case like the present, of more than one promisor, that a covenant never to sue one, is not a release, as otherwise a contract not to sue one, though founded on mere personal favor or only part payment, would, if operating as a release, discharge all the other promisors. 12 Mod. 551; 8 Durn. & E. [1 Term R.] 168; 6 Taunt. 289; 7 Johns. 207; 11 N. H. 437; Durrell v. Wendell, 8 N. H. 369; President, etc., of Catskill Bank v. Messenger, 9 Cow. 37; 4 Greenl. [4 Me.] 421; 17 Mass. 585; 15 Mass. 112. Probably, then in the present case, the interest and feelings of Webber cannot be considered as entirely removed in respect to Gore by this covenant, as the remedy over, on it by Webber, if sued, might prove worthless, and is attended by some trouble and expense, even when successful, that cannot be fully indemnified.

But we do not find it necessary to dispose of the question entirely on this ground. Because, unfortunately for the plaintiff, there is a stipulation in the case, given by Webber to Gore, when the latter made the covenant, by which Webber undertakes to save Gore harmless from any cost she may incur by Ferson's contesting his liability on the notes, as he did, after the covenant. This creates a direct interest in Webber to support the prayer of the present bill, in order to have the notes given up, and thus prevent any suit or cost on them, which he might in the end be obliged to pay under that stipulation. So if Gore should sue one of the indorsers of the note, (not Ferson) no reason can be seen why that one might not, for what was recovered against him, sustain a suit against Webber. The testimony of the latter is therefore inadmissible, and under the objection made, must be excluded. This does not seem to conflict with what in some views is equitable as well as legal. For Webber appears to have been throughout deeply interested in the whole transaction, if not a principal in it. Though in hearings in chancery the parties are to be listened to, when testifying to their bills and answers, notwithstanding their interest; yet neither they nor others can be used as witnesses technically, as to the merits of the case in a court of equity, any more than in a court of law, if directly affected in a pecuniary point of view by the result of the proceedings. And though the inclination in modern times is to let objections to witnesses operate rather on their credibility than their competency, and more especially might a judge hear all, and weigh all without great risk; and though Bentham urges this, as the true philosophy of evidence (see 1 Benth. Ev. 1), still the rules as to witnesses are the same before a judge in our systems on the trial of the merits, as before a jury, and till altered by legislation in both, we must continue to adhere to the settled discriminations between competency and incompetency.

Excluding the testimony of Webber, much of the controverted matter of fact in the case is put out of question. He is the only witness who testifies to any interest in Stackpole, either in the bond from Baker and Lindsey, or in the land itself. He is, likewise, the only witness, who testifies to any representations by Stackpole before the sale, as made by him to Ferson or Webber, and which are charged in the bill to have been exaggerated or false. It is clear, then, that had it not been for the demurrer by Stackpole, the bill would now have no ground to rest on for justifying any decree whatever against him, and so far might be at once dismissed. But the demurrer being in, the several causes assigned for it must be examined, unless the last of them is found to be sufficient. This relates to the neglect of the complainant to demand that the contract be rescinded till after June, 1840, when the title had passed from him to Gore, and could not be reconveyed to the respondents. The effect of that will be considered in connection with the case of the other respondent, Sanger, who among other objections raises that also. The answer of Sanger, as detailed in the statement of the facts, before given, denies any false or exaggerated representations either made or exhibited by him in relation to the timber or land at the sale of the bond. As this denial is responsive to the bill and sworn to, it must be regarded as true, considering that no witness or document proves the contrary, after excluding the testimony of Webber. Carpenter v. Providence Wash. Ins. Co., 4 How. [45 U. S.] 185. From the other evidence in the case, it is doubtful, whether the statements if made, were really exaggerated, or to such an extent as to indicate a fraudulent intent; or any material mistake. Baker swears to his belief at the-

time, that the land was richly worth more than it was sold for, which was six dollars per acre, and that Webber himself, before the purchase, did examine the tract in person, and "express himself satisfied" with it. He further swears, that Ferson examined it in part, before making some of the payments, and was also satisfied, and made no complaint of any unfairness. Bartlett, another witness for the plaintiff, testifies, that the reputation of this land stood high at that time, and indeed superior to any other on the Dead river, and that Ferson, after examining it in 1836, said he thought there was as much timber on it as had been represented. Lindsey also swears to the high reputation of this land in 1835, and that Ferson, after examining a part of it with him, before paying the first notes, expressed himself satisfied, and asked $8 per acre; and when he failed in 1840 to make further payments, complained of no unfairness. He swears further, that Webber examined it before the sale, and said it was better than had been represented. So Lemuel Pratt swears to the high reputation of this tract in 1835, as also does Jacob G. Loring.

It is true, that two of these witnesses had been owners of the land; but they are not now interested, and are supported by several, who had not been owners, and they are not contradicted by any other testimony in the case. Most of those testifying to the small amount of timber on the lot, when the depositions were given, knew nothing as to the quantity of pine on it at the time of the sale in question, in 1835. And since then a large quantity is proved to have been cut off. Near two millions are sworn to by one witness in one year, and another witness swears, that at least three millions of good pine timber have been cut from this land since 1835. It would be very difficult on such evidence to raise any question as to false representations having been made, or any mistake having happened, that would justify the interference of a court of equity.

There is, then, no sufficient evidence of fraud by Sanger, or by others, to which he was either conversant or knowingly profited by. One of these is usually necessary to charge a person prima facie with fraud. See Warner v. Daniels [Case No. 17,181]; Hepburn v. Dunlop, 1 Wheat. [14 U. S.] 199. Expressing an opinion is not enough. Bacon v. Bronson, 7 Johns. Ch. 194, 201; Bibb, 212; 1 Story, Eq. Jur. § 197; 9 N. H. 116; 2 Kent, Comm. 485; [Russel v. Clark] 7 Cranch [11 U. S.] 69; Stone v. Denny, 4 Metc. [Mass.] 151, 158; Haycraft v. Creasy, 2 East, 92; 1 Sugd. 280-283, 391; Small v. Attwood, 3 Younge & C. Ex. 107. Certainly there must be knowledge to charge one criminaliter for fraud of an agent. Many of the cases that avoid transactions for fraud or false statements made by others, seem to require, that those others must be part owners or agents. Lobdell v. Baker, 1 Metc. [Mass.] 193; Seaver v. Dingley, 4 Greenl. [4 Me.] 306. But it is probably enough, if the vendor, knowing that such false representations had been made by any one, and that they influenced the vendee to make the purchase, neglected to undeceive him and profited by the falsehood. 14 Ves. 91. So in cases of sales, if the owner profited by the terms of the trade made, brought about by the fraud of an agent, but of which fraud or falsehood he was not personally conusant, the sale may be void for any mistake of material facts involved, and, according to some cases, he is liable certainly for the fraud, if adopting the contract made by fraud. They go on the ground, that fraud by an agent is fraud by the principal, and that the principal should be bound by the wrong or misconduct of his own agent, rather than that a stranger should suffer, and that the principal cannot take the benefits of a trade by his agent without taking the burthens. and finally, that he cannot adopt part and repudiate the rest, where the transaction is a unit, and he claims the benefits of the whole. See Warner v. Daniels [supra], and cases there cited.

But it is unnecessary to settle this last point in the present case, as the evidence of any fraud in the agent is defective, imperfect, and not at all satisfactory. In respect to a material mistake, there is more evidence repelling it than has yet been alluded to. The question as to false representations or fraud being out of the case in connection with Sanger, the idea, that a mistake existed, mutual or otherwise, which was of sufficient magnitude to require the contract to be rescinded in order to do justice, is further negatived by the length of time Ferson forbore to make any complaint. He delayed to do it not only until long after the execution of the contract, but until long after the personal examination of the premises separately by himself as well as Webber. The time was nearly six years. Had such a mistake existed originally, it would most probably have been discovered at once and complained of. There is no pretence of any discovery of new matter at subsequent periods. In addition to this, the mistake, if happening, will not avail to rescind a contract, if the party had full means of examining the truth of the matter, and if opportunities were given for that purpose by the vendor, and if the vendee improved them, and thus relied on his own inquiries and inspections, rather than on the statements of the other contracting party. Hough v. Richardson [Case No. 6,722], explaining Daniel v. Mitchell [Id. 3,562]; Salem India Rubber Co. v. Adams, 23 Pick. 256. This always presupposes that no falsehood or fraud are used to mislead in connection with his inquiries. Warner v. Daniels, before cited. Here, time existed, between the statements on the first negotiation and the sale, to examine into the real state of the land and timber and

streams of water. The agent or party then in interest did examine, and made report, and expressed himself satisfied with the result, and no misrepresentations accompanying it are proved. It would be very difficult to say after this, that if a mistake occurred, it arose from a reliance merely on the statements made by the vendor, and without any means or opportunity of personal inquiry and judgment. The celebrated case of Attwood v. Small, 6 Clark & F. 232, as decided finally in the house of lords, is very direct on this point. See, also, cases cited in Warner v. Daniels [supra]. But the six or seven years during which the grantee lay by, without complaint of any mistake or misrepresentation, or other matter entitling him to relief, and the work done by him on the land in the mean time, and the continued payments made on the notes, strongly repel the idea that any ground of any kind for relief existed, and go far to bar any equity in setting up a claim to it on any ground at this late day. Livingston v. Story, 11 Pet. [36 U. S.] 407; [Piatt v. Vattier] 9 Pet. [34 U. S.] 416; Boyce v. Grundy, 3 Pet. [28 U. S.] 210; McKnight v. Taylor, 1 How. [42 U. S.] 161, 168; Bowman v. Wathen, Id. 189; 1 Sugd. 392; 2 Schoales & L. 636; [Prevost v. Gratz] 6 Wheat. [19 U. S.] 481; [Hughes v. Edwards] 9 Wheat. [22 U. S.] 489; [Miller v. M'Intyre] 6 Pet. [31 U. S.] 61. There must be some satisfactory apology for continuing so long to treat the property as one's own, and the sale valid, by showing that the vendee had no means of discovering the mistake sooner, or that it was concealed by fraud, or something else of that exculpatory character. Chandos v. Brownlow, 2 Ridg. App. 345; 1 Story, Eq.-Jur. §§ 146, 148; 2 Story, Eq. Jur. § 1520; 2 Kent, Comm. 480; Junkins v. Simpson, 14 Me. 364. There must be evidence of reasonable diligence, where no fraud is used for concealment, or a court of equity will remain passive. McKnight v. Taylor, 1 How. [42 U. S.] 161. Moreover, the grantee has taken off some timber since the purchase, and allowed others to take off still more, so as not to be able to restore the land in the condition in which it was received; and beyond this, has parted with the title entirely by allowing the mortgage on it to be foreclosed in the hands of a third person not a party to these proceedings. So, that if the contract could otherwise be properly rescinded for a mistake, it could not be under circumstances, rendering it impossible to place all the parties in statu quo. Hough v. Richardson [supra]; Richards v. Allen, 17 Me. 296; Coolidge v. Brigham, 1 Metc. [Mass.] 547; 1 Durn. & E. [1 Term R.] 135, 136; 4 Marsh. 85; 2 Kent, Comm. 480; 5 East, 449; 1 Mer. 643. A release by the complainant of all his right and title, as preferred in the bill, would be a release of mere moonshine. This view of the subject, connected with the fact, that no offer was made to rescind the contract before Ferson parted with the title,

goes to sustain the last cause of demurrer set out by Stackpole. The bill itself contains matter inconsistent with the relief prayed for.

Looking then to the whole case, there seems to be no mode of relief, except by damages, even if a material wrong has been done by either of the respondents. And as to such relief, in case of a mere mistake, it would not only be inequitable generally after such a lapse of time, but of very questionable propriety in a court of equity, at all. Certain am I, that however may be the weight of authority or principle on this point in a case of clear wrong or fraud, accompanied by injury and full relief not obtainable at law,—and my inclinations are to give damages in such cases; see Warner v. Daniels [supra],—yet there is too much doubt concerning the fraud and injury in the present case, to render it necessary to go into the question, whether damages should be awarded in a court of equity, where, on the face of the record, they or nothing must be allowed. 1 Sugd. Vend. 364, note; Stone v. Denny, 4 Metc. [Mass.] 151; Newham v. May, 13 Price, 749; Todd v. Gee, 17 Ves. 273.

Some other questions have been presented in the argument of this case, which it is not found necessary to settle, such as whether the false representation of mistake, if occurring at all, did not happen between Webber and the respondents, and not between Ferson and them, and whether Ferson must not on the facts be considered as having made a new contract with the former owners, rather than buying of the respondents under Webber. Another is, whether the respondents can be considered as selling the land itself, or only the bond, only a right to purchase the land, if the assignees. after examination, pleased to do it, and thus making the measure of damage, as to the vendors of the bond, merely the extra sum or bonus paid to them for that right. But I do not express any opinion on these, as none is. necessary. Bill dismissed.