FIRST NAT. BANK OF DENVER V. DEVENISH.

15  299<br>8a  547

1. PAYMENT OF CHECKS BY BANKS WHEN DRAWER HAS NO FUNDS.— Banks are required to know at all times the balance to the credit of each individual customer, and they accept and pay checks drawn by customers at their own risk.  If through inattention or negligence a bank pays checks when the drawer has no funds to his credit, it must look to him for correction of the error and not to the party to whom the checks were paid.

2. A MISTAKE OF FACT AS TO THE STATE OF A CUSTOMER'S BANK ACCOUNT AFFORDS NO GROUND OF RELIEF FOR PAYMENT OF HIS CHECKS.— Where one bank having received, in the regular course of business, checks drawn upon another bank, sends them to its correspondent for collection, who presents them to the bank upon which they are drawn, and receives in payment the drawee's draft upon a third bank, which he immediately remits to the payee, the checks being duly surrendered and canceled, the subsequent discovery by the bank upon which the checks were drawn that the drawer had no funds on deposit for their payment, and its demand for a

return of the draft issued in payment thereof, constitutes no defense to an action to enforce payment of the draft. A mistake of fact as to the state of the customer's account affords no ground for relief in the absence of an authorized agreement to return the draft.

3. VARIANCE BETWEEN ALLEGATIONS OF ANSWER AND PROOFS.— The averment that the bank paid the checks under a mistake of fact as to the condition of the customer's account is not sustained by proof that it held a check drawn by him and represented by him to be good, the representation proving false; nor is either circumstance available against an action upon the draft given in payment of the checks.

*Appeal from District Court of Arapahoe County.*

Messrs. WOLCOTT & VAILE, for appellant.

Messrs. W. S. UHREN and L. B. FRANCE, for appellee.

REED, C. Appellant is a national bank doing business in the city of Denver. In the year 1883 appellee was a private banker doing business at Tin Cup, in the county of Gunnison. Appellant, in the regular course of business, received checks amounting to $312, drawn by one C. F. Caldwell upon the bank of appellee, which were forwarded to its correspondent, one Freeman, at Tin Cup, for collection, and presented on the afternoon of December 27, 1883, at the bank of Devenish & Co., and paid by draft drawn upon the German National Bank of Denver, of which the following is a copy: "$312. Cochran & Devenish, Bankers, Tin Cup, Colo., December 27, 1883. Pay to the order of S. N. Wood, cashier, three hundred and twelve dollars. S. G. DEVENISH & Co. To German Nat'l B'k, Denver, Colo."

On the afternoon of the next day (December 28th), appellee returned the checks which had been paid and canceled on the day previous, to Freeman, and asked a return of the draft, claiming that the checks had been paid through mistake. The draft had been forwarded by Freeman to the appellant at Denver. Appellee, by telegram, stopped the payment of the draft. Appellant did not return the draft, and afterwards instituted this suit to recover the amount,

the complaint being in the ordinary form of a bill of exchange.

The defendant in answer put in special pleas admitting the presentation and payment of the checks.

"Believing that said Caldwell had on deposit with defendant funds to meet and pay said checks, and in that belief the defendant made and delivered to said Freeman, agent of the plaintiff, the bill of exchange in the complaint herein described; but defendant avers that such bill of exchange was so executed and delivered as aforesaid, by defendant, under a mistake of fact, and that the said Caldwell did not then have, at the time of the making and delivery of said bill of exchange, in the hands of defendant, funds to pay the check for which said bill of exchange was given."

That defendant discovered the mistake about 1 o'clock the next day (December 28th), when the checks were returned to Freeman, and he was requested to return the draft. That Freeman promised to return the draft, but neglected to do so.

It is also pleaded, as a special defense, that on the 20th of January, 1884, Caldwell deposited with appellee large sums of money, much in excess of the amount of the draft, but that appellee, relying upon the promise of Freeman to return the draft, failed to protect himself, and paid out such deposits on other checks of Caldwell.

These special defenses were fully replied to by the plaintiff. The case was tried to the court without a jury, and judgment found for the defendant, from which this appeal was taken.

The appellee relies, in argument in support of the judgment, upon two propositions: *First.* That the payment of the checks was made through such a mistake of fact as legally entitled him to recall it upon discovering the mistake. *Second.* Upon the supposed rescission of the transaction by delivery of the paid and canceled check to Freeman, the correspondent of appellant, and the demand for the return of the draft, and the supposed acceptance of the checks by Freeman and their detention by him.

Caldwell was a customer of appellee,— kept his account with them. They were supposed to be informed of his financial standing, and certainly were supposed to know the condition of his account with them at the time of the presentation of the checks for payment. Banks are required, and for their own safety are compelled, to know at all times the balance to the credit of each individual customer, and they accept and pay checks at their own risk and peril. If, from negligence or inattention to their own affairs, banks improvidently pay when the account of the customer is not in a condition to warrant it, and if by mistake a check is paid when the drawer has no funds, the bank must look to the customer for rectification, not to the party to whom the check was paid.

The supposed mistake relied upon in argument is stated in the pleadings as follows: "That such bill of exchange was so. executed and delivered as aforesaid, by defendant, under a mistake of fact, and that the said Caldwell did not then have, at the time of the making and delivery of the said bill of exchange, in the hands of the defendant, funds to pay the checks for which said bill of exchange was given, and that defendant discovered said mistake at, to wit, the hour of 1 o'clock on the afternoon of the 28th day of December, 1883."

The character of the supposed mistake, as stated in pleading and shown in evidence, was such as to preclude appellee from availing himself of it as a defense. It being the direct result of carelessness and inattention to his own affairs, there can be no relief at law, and, even in equity, courts will seldom if ever relieve a man from the result of a mistake attributable to negligence or want of diligence in his own affairs. Kerr, Fraud & M. 407; *Beaufort v. Neeld*, 12 Clark & F. 248; *Leuty v. Hillas*, 2 De Gex & J. 110; *Railroad Corp. v. Babcock*, 8 Metc. (Mass.) 346; *Ferson v. Sanger*, 1 Woodb. & M. 138; *Wood v. Patterson*, 4 Md. Ch. 335.

An examination of the evidence shows that it utterly failed to support the allegation in the answer in regard to a mistake.

S. G. Devenish, in substance, testified that, at the time of the presentation of the Caldwell checks on December 27th, for which a draft was drawn, Caldwell was a customer of his bank; that he had no money to his credit in the bank; that prior to that date, on December 19th, Caldwell had left with the bank for collection a check on the First National Bank of Leadville for $150, which he represented would be paid; that, relying upon such assurances as to the check for $150, he accepted the checks of Caldwell on the 27th for $312, and drew the draft in controversy; that at 1 o'clock, P. M., of the 28th, he found that the representations of Caldwell in regard to the Leadville check of $150 were false, and the check unpaid; that he then caused the checks of Caldwell to be returned to Freeman, and requested a return of the draft. It is apparent at once that the supposed mistake attempted to be proved was not the one alleged in the pleading. It is perhaps needless to say that the supposed mistake established by the evidence is not such an one as to be cognizable at law as a ground for the rescission of an executed transaction between the parties to this suit. It was not a mutual mistake to which appellant was a party, or of which he was supposed to have any information. It seems at most, when explained, a case of misplaced confidence of appellee in the statements of a customer on the strength of which money was advanced to the customer and paid to appellant. Such mistakes are not such as are defined as mistakes in the books and remedied in courts.

We do not see how the last special defense, viz., that Caldwell afterwards deposited large sums of money which appellee, relying upon the promise of Freeman to return the draft, paid out on other checks, can aid him. Mr. Devenish testified that on the 2d or 3d day of January, 1884, about mid-day, he informed Freeman of his surprise at having received a notice of protest of the draft in question. Consequently he knew at that time that the draft was being retained by the appellant, and he held for its payment on refusal of the German National Bank to accept

it; and on the 20th of January, he knew it had not been returned, nor he relieved from his responsibility on his outstanding draft. Why did he not protect himself when he had an opportunity and full knowledge of the facts? If appellee considered the transaction rescinded, and the checks of Caldwell unpaid by the draft, good faith required that he should have paid them from the deposited funds, knowing them to be outstanding and unpaid. His failure to protect himself when opportunity offered cannot well prevail as a defense in the action.

The defense made is not tenable on the ground of mistake, and, if allowed to prevail, could only succeed upon full proof of the agency of Freeman, and his authority to bind appellant by an agreement to rescind, and proof that he did make the contract and promised to return the draft. The testimony fails to establish any such agency. It shows him to have been a merchant to whom appellant sent checks on the bank of appellee for collection, which he collected, and remitted the proceeds, generally in drafts drawn upon its correspondent, the German National Bank. Appellee did not attempt to prove anything further in regard to the scope of Freeman's agency. Freeman testified that that was the only agency or connection he had with appellant.

The testimony also fails to establish any agreement of Freeman to rescind and return the draft. The interview with Freeman was not by Devenish, as he was indisposed, but between Mr. Uhren, representing Devenish, with Mr. Freeman.

Mr. Uhren testified as follows: "I took the checks, with that mark on the upper left-hand corner in pencil, and the signature had been canceled; that is, by drawing a line across it with a pen. Took them over to Mr. Freeman and explained the circumstances to him, very shortly, as I was very busy. He took the checks. He said he could not give me the draft, because it was in the postoffice, but that the matter would be all right. I left the store and went home, and heard no more about it until it was protested; and afterwards the suit was brought."

"The Court. Did he say to you that he would make the matter all right? Answer. I understood the draft would be returned. He could not give it to me at that time because it was in the postoffice. I do not think he said in express words, 'I will have the draft returned.' I cannot say exactly what his language was at this time."

The testimony of Mr. Freeman was as follows: "I am under the impression that it was a couple of days after the defendant Devenish paid the Caldwell checks that Mr. Uhren brought the said checks back and left them with me. I know it was one day, and I think it was two. I did not, at the time Mr. Uhren returned the Caldwell checks to me, or at any time afterwards, agree to return the draft in controversy to the defendant. I believe I said I would write down about it, which I afterwards did. I did not ever accept, for the plaintiff in this action, the said Caldwell checks from the defendant Devenish, or from Mr. Uhren as his agent.

"I told Mr. Uhren at the time he left the checks with me that I had sent the draft off. I did not, on the 2d or 3d of January, 1884, at the defendant's bank in Tin Cup, tell him that I was surprised that his draft had been protested, and that it would be all right as soon as the plaintiff received the letter, for at that time I had not written the plaintiff about the matter. It was about a week afterwards that I wrote. * * * I did not, as agent of the plaintiff, accept the Caldwell checks given for the draft in controversy. I had no authority from plaintiff to accept from defendant the said Caldwell checks for said plaintiff."

For the reasons above given we advise that the judgment be reversed and the cause remanded.

RICHMOND and BISSELL, CC., concur.

PER CURIAM. For the reasons stated in the foregoing opinion the judgment of the court below is reversed.

*Reversed.*

MR. JUSTICE ELLIOTT did not participate in the decision of this cause, having tried the cause below.