THE BELLEVUE BANK OF ALLEN KIMBERLY & Co., Appellant, v. THE SECURITY NATIONAL BANK OF SIOUX CITY, IOWA, Appellee.

BANKS AND BANKING: Principal and Agent—When Relation 1 Exists—Collection of Note. A bank receiving a note for collection and remittance becomes the agent of the sender to perform such acts.

BANKS AND BANKING: As Collecting Agent—Notes—Checks in 2 Payment—When Payment Effected. The naked act of accepting a check in payment of a note is presumed in law to be on condition that the check is good. If the check is dishonored, no payment is effected.

PRINCIPLE APPLIED:    (See application below.)

BANKS AND BANKING: Deposit of Checks—Credit Thereon—Can-3 cellation. The naked act of a bank in entering a credit on its books in favor of one depositing the check of a third party is presumed in law to be on condition that the deposited check is good. If the check is dishonored, the credit can be cancelled.

PRINCIPLE APPLIED:    (See application below.)

BANKS AND BANKING: Remittances Under Mistake—Fraud—Re-4 call—Cancellation—Principal and Agent. A remittance in the form of a draft to the holder of a note by one acting as the collecting agent for such holder, such remittance being made under a mistake of fact, induced by fraud, that said note had really been paid, may be recalled and cancelled even though the holder of the note to whom the remittance was sent was not a party to the said fraud, the said holder parting with nothing and losing nothing by reason of the mistake.

PRINCIPLE APPLIED: The Western Co. of Sioux City and the Michigan Co. of Kalamazoo, Mich., were both going concerns.

April 1st; the Western Co. issued $240,000 of accommodation notes to the Michigan Co., the same being sold at divers places. Plaintiff bought one of these notes, which was payable at defendant's bank August 1st following. Nearly $20,000 of like notes, owned by other parties, fell due at the same time and place. Being accommodation notes, the Michigan Co. assumed to meet them by sending to the Western Co. on July 26-28 four of its own checks (all later dishonored) aggregating $30,000 and drawn on Kalamazoo and New York banks. The Western Co., having a checking account with defendant, deposited these four checks with defendant on the afternoon of July 30th and received credit entry on the books. Defendant forwarded the checks at once for payment, the correspondent being ordered to wire notice of dishonor if any such. In due course, the four checks would be presented August 1st. A few days prior, the defendant received plaintiff's note for collection. Defendant had for collection other notes of the same kind aggregating $20,000. Defendant presented all notes for payment on August 1st and received from the Western Co. a check on itself for the aggregate amount and surrendered them all to the maker. Defendant knew nothing of the nature of the notes, or of the relations existing between the Western Co. and the Michigan Co. It believed the four checks had been or would be honored. On August 1st at 4:30 P. M., it mailed to plaintiff a draft for the amount of its note. Within an hour, a wire said the Kalamazoo checks were dishonored. On the same day, defendant repossessed itself of all the notes, returned the Western Co. check, stopped payment of the draft and wired demand on plaintiff for its return when received. The note was protested and returned. The Western Co. and the Michigan Co. both proved to be insolvent. No indorser or security was released. Plaintiff brought suit on the draft.

*Held,* (a) the defendant was the mere agent of the plaintiff to collect the note, (b) the agent was justified in taking the check of the Western Co. on condition *in law* that if the check proved worthless no payment in fact would be effected, (c) the credit on the books to the Western Co. induced by the worthless Michigan Co. checks was also conditional, and (d) defendant had the right, on discovery of the mistake to recall the draft and was not liable thereon.

ESTOPPEL: Election of Remedies. One who, while acting as agent in collecting a note, was misled into the belief that the note was paid by reason of a credit extended to the maker of the note by checks deposited by him with the agent, and who thereupon remitted a draft to the holder of the note for the proceeds of the supposed collection, and who immediately on learning that the

checks were worthless recalled the draft, is not estopped to deny
liability on the draft because on the day following he brought
suit on the worthless checks and later dismissed the same.

*Appeal from Woodbury District Court.*—HON. GEORGE
JEPSON, Judge.

THURSDAY, FEBRUARY 11, 1915.

ACTION upon a bank draft drawn by the defendant upon
its Chicago correspondent in favor of the plaintiff and remit-
ted by mail. The defense is affirmative. It is averred in
effect that the draft was issued and mailed by mistake and
that immediately after its mailing the defendant wired stop-
page of payment to the Chicago correspondent and wired a
demand of return to the plaintiff as payee, all of which was
done on the same day and before the plaintiff had received
the draft or had been otherwise advised of its remittance.
The detailed facts pleaded will be set forth in the opinion.
There was judgment for the defendant. Plaintiff appeals.—
*Affirmed.*

*Shull, Gill, Sammis & Stilwill,* and *Munger, Robinson*
and *Kindig,* for appellant.

*Milchrist & Scott,* and *Carter, Brackney & Carter,* for
appellee.

EVANS, J.—The plaintiff is a banking partnership of
Bellevue, Michigan. The defendant is a banking corporation
of Sioux City, Iowa. Two other actors figure prominently in
the facts. The Western Implement Company was a partner-
ship engaged in the retail implement and automobile business
in Sioux City. Its capital was about $11,000. The Michigan
Buggy Company was a manufacturing corporation of Kala-
mazoo, Michigan, engaged largely in the manufacture of au-
tomobiles. The Western Implement Company was a patron
of the defendant bank to the extent that it maintained a check-
ing account therein. For convenience in the discussion, the

names of the two companies will be abbreviated and they will be referred to as the Michigan Company and the Western Company. Both were going concerns. Both proved to be insolvent, the Western Company becoming involved in the insolvency of the Michigan Company. The draft sued on was in supposed collection of and remittance for a note for $923.75 executed by the Western Company to the Michigan Company; endorsed by the Michigan Company to the plaintiff; sent by the plaintiff to the defendant for collection and direct remittance of proceeds. The note was drawn payable at the defendant bank. On the date of its maturity, the Western Company delivered its check on the defendant bank for the amount of said note and others maturing on the same date executed by the same makers to the same payee but held by different endorsees. At the time such check was delivered, the Western Company had an apparent credit upon the books of the bank for an amount sufficient to meet the same. Relying upon such apparent credit and believing the check to be therefore good, the defendant bank drew its draft in favor of the plaintiff and remitted the same as the proceeds of the collection of its note. The fact which came to light immediately thereafter was that the apparent credit of the Western Company on the books of the defendant bank had been obtained by a scheme which was essentially fraudulent and whereby the Michigan Company and the Western Company intended to induce the defendant bank to accept the checks of the Western Company in payment of the various notes referred to. The facts in brief were that in April, the Michigan Company had obtained from the Western Company its notes for a total sum of $240,000. These were wholly without consideration and were accommodation notes. These were sold by the Michigan Company to various purchasers. As between the Michigan Company and the Western Company, it was the duty of the former to meet these notes when they matured. For that apparent purpose it sent on July 26th and 28th to the Western Company two checks upon banks in Kalamazoo and two

checks upon banks in New York, making a total of over $30,000. On the afternoon of July 30th, these checks were deposited by the Western Company to its own credit in the defendant bank and were forwarded by the bank for collection. Under the instructions of the defendant bank to the collecting banks, it was entitled to telegraphic notice in case of dishonor. In due course these checks would be presented to the drawees by August 1st. The Kalamazoo checks were thus presented in the forenoon. The defendant bank, ignorant of the real relations between the Michigan Company and the Western Company, and ignorant of the fact that the paper was accommodation paper; and having received no notice of the dishonor of the checks deposited on July 30th, and believing, therefore, that the same had been or would be honored, remitted the draft in question to the plaintiff at 4:30 P. M. Within one hour thereafter, it received telegraphic notice of the dishonor of the Kalamazoo checks. It immediately sought out the Western Company and then learned from it of the facts which we have above recited. It demanded and received back the note which it had previously surrendered, and recalled the draft by wire in the manner already indicated. Later, it received telegraphic notice of the dishonor of the New York checks. The Michigan Company and the Western Company were in fact insolvent, as these developments disclosed. The defendant bank thereupon formally protested the note and returned it to the plaintiff. No endorser or other form of security was released nor was any loss caused to the plaintiff by any act or failure on the part of the defendant. The plaintiff refused to return the draft and refused to concede any right to the defendant to recall the same. The detailed facts in the case are undisputed and are made to appear largely by stipulation.

It will be seen from the foregoing that the draft in suit presents on its face a cause of action and that the affirmative defense thereto is in the nature of a failure of consideration and mistake.

The contention of the plaintiff in argument is that its situation is the same as if it had itself received from the Western Company its check drawn on the defendant bank and as if it had presented such check at the defendant's counter and had received payment therefor either in money or by the draft in question. If the case before us is the equivalent of the supposed case, then it may be conceded that the plaintiff is entitled to recover. The general rule undoubtedly is that when the holder of a check presents it at the counter of the bank upon which it is drawn and receives payment therefor, the transaction is closed and is not subject to reconsideration. It is upon this theory that the plaintiff has argued the case here. The following principal authorities are relied on in support of the proposition: *National Exchange Bank v. Ginn,* 33 L. R. A. (N. S.) 963 (Md.) ; *Oddie National Bank v. National City Bank,* 45 N. Y. 735; *First National v. Burkham,* 32 Mich. 328; *Citizens Bank v. Schwarzschild,* 23 L. R. A. (N. S.) 1092 (Va.) ; *First National Bank v. Devenish,* 15 Colo. 229. From a note in 23 L. R. A. (N. S.) 1092, *supra,* appellant's brief quotes the rule as follows: ''In the absence of fraud, the payment of a check or note by a bank upon which it is drawn or at which it is payable, under the mistaken belief that the drawer of the check, or maker of the note, has sufficient funds to his credit to pay it, cannot be recovered by the bank.'' From the opinion there reported (p. 1095), we quote the following elaboration of the rule:

'The general rule is that money paid under a mistake of fact may be recovered; but the payment of a check or note by a bank upon which it is drawn or at which it is made payable, under the mistaken belief that the drawer of the check or the maker of the note has sufficient funds to his credit to pay the check or note, seems to be an exception to the general rule. The cases do not seem to be entirely agreed upon what principle this exception is based, but the great, if not the overwhelming weight of authority, maintains this exception to

the general rule.   Some place it upon the ground that there is no privity between the holder of the check or note and the bank; others upon the ground that, since the bank always has the means of knowing the state of the depositor's account by simply looking at its own books, the payment is not a payment by mistake within the meaning of the legal rule which permits a recovery; others still place their decision upon both grounds.

"In *Hull v. Bank of South Carolina,* Dud. I. 259, one of the earliest American cases that we have found, the supreme court of South Carolina said that 'this question is to be decided rather by authority than general reasoning on the subject. . . .   They *cannot always guard against fraud and imposition,* but they may against mistakes depending on an inspection of their own books and accounts. . . .   They accepted and paid the check presented by the defendant for and on account of Hopton, the drawer, whose money they kept for his convenience and accommodation.   The privity of contract is between them and their customer, Hopton, and not between them and one who may have happened in the course of dealing to present a check drawn by Hopton.' "

The reason for the exception to the general rule above stated is based upon two important considerations.   The first is that ordinarily there is no reason but laxity and neglect why a bank should not know the state of a depositor's account at the time it pays a check.   The second is that the holder of a check receiving payment thereon is in no position to inquire as to the state of the depositor's account or as to his credit with the paying bank.   Taking the exception as above stated, we think it is not decisive of the case before us, nor is this case the equivalent of the supposed case stated by the appellant.

The plaintiff sent its note to the defendant *for collection.* It made the defendant its agent for that purpose.   The rela-

tion, therefore, of principal and agent obtained. The duties of the agent were doubtless determined un-

**1. BANKS AND BANKING: principal and agent: when relation exists: collection of note.** der the law and usage of banking. But at no stage did the relation of debtor and creditor, or of buyer and seller, arise. The plaintiff continued to own the note. The defendant owed the duty of diligence in its collection. If the defendant failed in its duty or overstepped its authority, it was liable to the plaintiff for its resulting loss. The foundation question is, what was the liability of the defendant to the plaintiff immediately before it mailed the draft? If it had not mailed the draft, would it have been liable for the amount supposed to have been collected on the note? The trial court found that the sending of the checks by the Michigan Company and the depositing of the same by the Western Company, and the issuance of the check of the Western Company against its credit in the bank all constituted one connected transaction. Exception is taken to this conclusion. We think it was clearly correct. All these acts were done in pursuance of the same plan and with the manifest intent to induce the defendant to believe that the acceptance of the check was safe and, in such belief, to surrender the possession of the note. The check which the defendant bank thus received was for over $20,000 and was for the amount of nineteen notes of the same character as that of plaintiff. The defendant bank, as the collecting agent, was within its duty in accepting from the

**2. BANKS AND BANKING: as collecting agent: notes: checks in payment: when payment effected.** maker of the note a check if it had reason to believe the same to be good. The acceptance of such check operated presumptively, however, only as a conditional payment of the note. Upon the dishonor of the check, the condition failed and the holder of the note was entitled to maintain his original cause of action. Whatever difference there may be in the authorities on these propositions, they are sustained by the great weight of authority and we are committed to

them. *Griffin v. Erskine,* 131 Iowa 444; *Dille v. White,* 132 Iowa 327.

The question of conditional satisfaction and conditional credits where checks are accepted in the transaction of business is very fully discussed in the cited cases and we will not now enter that field of discussion. The following excerpt from the *Griffin* case sufficiently indicates the trend of such discussion:

"Checks, drafts and other bills of exchange are the means of transferring the money, in adjusting nearly all commercial transactions, and in authorizing an agent, whether bank or individual, to make collections, it may be assumed, in the absence of instructions to the contrary, that the authority is to be executed in the manner usual and customary in the commercial world. While the agent may not accept anything but the actual cash in satisfaction of the claim, he may receive a check or draft, negotiable and payable on demand, which he has good reason to believe will be honored on presentation, as a ready and more convenient means of obtaining the money in conditional satisfaction of the debt. Such payment offers no greater temptation to the agent than payment in cash to which ordinarily it is equivalent. If honored by the drawee, payment relates back to the time of delivery."

It is likewise true that the credit obtained upon the books of the defendant bank by the Western Company by the deposit of the Michigan Company checks on July 30th

3. BANKS AND BANKING: deposit of checks: credit thereon: cancellation.

was presumptively a conditional credit and was also subject to the honor of the checks. *In re State Bank,* 45 Am. St. Rep. 454 (Minn.); *Blake v. Hamilton Savings Bank,* 128 Am. St. Rep. 684 (Ohio); *Bank v. Cummings,* 24 Am. St. Rep. 618 (Tenn.); *Beal v. City of Somerville,* 50 Fed. 647; *St. Louis Railway Co. v. Johnston,* 133 U. S. 566; *Fayette National Bank v. Summers,* 7 L. R. A. (N. S.) 694.

The sum of the situation thus presented was that the

plaintiff's note was not in fact paid; and in a legal sense the
plaintiff never lost its title thereto. As between the defend-
ant and the Michigan and Western Compa-

**4. BANKS AND BANKING: remittances under mistake; fraud: recall: cancellation: principal and agent.**

nies, it was as though the Michigan Company
had deposited its four checks upon the New
York and Kalamazoo banks for the purpose
of meeting its maturing notes. The scheme
pursued was a legal fraud upon the defend-
ant. It was calculated to mislead and did mislead. As be-
tween these companies and the defendant bank, the bank was
clearly entitled to retrace every step taken and to reduce the
entire transaction to a nullity. But the plaintiff was not
a party to the wrongful acts of such companies. Can it for
that reason stand in the way of the cancellation of the con-
ditional credits obtained by the offending companies, even
though redress to the defendant would involve no loss to it?
Can it insist upon the affirmative benefit in its own favor which
was manifestly intended by the wrongdoers? Plaintiff's note
was in fact worthless when it sent it for collection. No ad-
vantage to it was lost by any mistake or act of the defendant.
If the defendant had not made the mistake which it did, the
note could not have been collected.

The general rule is that money paid through a mistake
of fact may be recovered back provided the recipient thereof
shall not thereby be put in any worse position than he would
have occupied if the mistaken payment had not been made.
In such case it is not necessary that the mistake be mutual.
*Union National Bank v. Sixth National Bank,* 3 Am. Rep. 718;
*James River National Bank v. Webber,* 124 N. W. 952 (N.
Dak.) ; *Merchants National Bank v. National Bank,* 139 Mass.
513 (2 N. E. 89) ; *Merchants Bank v. National Eagle Bank,*
101 Mass. 281. The exception to this rule has already been
stated in the quoted excerpts. As therein appears, the excep-
tion does not obtain in the presence of fraud or imposition.
It only remains then to inquire whether the innocent recipient
will be prejudiced by requiring restitution.

We think it must be said upon this record that at the time the defendant bank mailed the draft in question it was not under obligation to do so; that it did mail the same under a clear mistake of fact which had been induced by legal fraud and imposition; that it mailed the draft in good faith in the reasonable belief that the conditional credit to the Western Company had become absolute by the honor of the checks. The mailing of the draft in no manner changed the position of the Bellevue Bank. It was not misled thereby nor did it act thereon. It was advised of the mistake before it knew of the existence of the draft or the supposed collection of the note. As between the parties, the effect of the draft was to give to the plaintiff a prima-facie case, and to throw the burden of defense upon the defendant. Notwithstanding the mistake, the defendant did everything which it could and ought to have done as the collecting agent of the plaintiff. Plaintiff sustained a loss, it is true, but it did not result through the mistake or fault of the defendant. The following excerpts from the *Dille* case, *supra*, are applicable here:

"The vendor had already lost; the paper was good for nothing to him. Nor does the fact that he supposed it to be good justify him in keeping the money or property received, which could only have been given for it by the purchaser upon the same supposition that it was good. There has been a failure of consideration.

"The appellant has met with a regrettable loss, but his misfortune is in no manner chargeable to the appellee. His loss was as real, tangible, and certain before and at the time he undertook to make the loan as it is now. To say that he might hold and enforce the note and mortgage for which the appellee has never received the slightest value is to say that he may, without having furnished the least consideration, compel the appellee to assume the responsibilities of his faithless banker and make good the wasted deposit."

The foregoing conclusions have direct support in the following authorities, each of which is almost identical in its principal facts with the case at bar: *Interstate National Bank v. Ringo,* 115 Am. St. Rep. 176; 3 L. R. A. (N. S.) 1179; *Merchants National Bank v. National Bank of the Commonwealth, supra,* 139 Mass. 513; 2 N. E. 89; *Steinhart v. National Bank,* 28 Am. St. Rep. 132 (Calif.).

In the first case cited, the Interstate Bank was the collecting bank which had received a note for collection from the Watkins Bank. The endorser of the note presented in payment his own check on the Merchants Bank. The collecting bank made immediate inquiry of the Merchants Bank whether such check was good and was informed that it was. The collecting bank thereupon accepted the check and surrendered to the endorser the paper of its principal. It credited the principal with the proceeds of the collection and mailed notice accordingly. It also charged up the amount against the credit account of the Merchants Bank, which account was maintained with it by the Merchants Bank for such purpose. The check proved to be in fact worthless. The information from the Merchants Bank that it was good was the result of a mistake of that bank, such bank having understood the conversation to refer to a different check. The Interstate Bank thereupon immediately rescinded, returned the check, and repossessed itself of the paper, and notified its principal. It was held that no one was prejudiced as a result of the mistake and that the parties were entitled to restore the *status quo.* The following excerpts from the opinion indicate the line of argument adopted in that case:

"There is at least plausible ground for the argument that until the note is paid its owner is entitled to its possession and to all the incidental rights attached to it, and therefore an agent who fails to return either the very thing intrusted to him, or its equivalent in money, the only thing he is authorized to accept for it, should not be permitted to haggle

about the extent of the resulting injury, but should be compelled to respond at once to his principal for the full amount of the note and to look for his own reimbursement to whatever rights he has succeeded in retaining against the maker. But when the note is recovered without its vitality or security having been in any way impaired, no reason is apparent why the agent should be liable at all, unless to the extent of any actual loss that might have been occasioned by his act. Therefore, as suggested by Mr. Daniel, a recovery of the note by the collecting agent upon the very day of its surrender to the maker retrieves any wrong thereby done to the owner. But manifestly the only importance of the two acts being done on the same calendar day arises from the necessity under ordinary circumstances of the note being protested on the day of presentation in order to hold the indorsers. In the present case there was no indorsement upon the note except that of Ladd, Penny & Swazey, who were hardly in a position to assert a right to notice of its dishonor.

"We do not understand that it is claimed, and it certainly cannot successfully be maintained, that the mere physical exchange of a note held for collection for a check can at once fix a liability upon the collecting agent, irrespective of all considerations of the subsequent conduct of the parties. If after such an exchange the agent, before the maker of the note left his presence, should become so far doubtful of the sufficiency of the check as to insist upon and obtain a retransfer of the note, this would clearly reinstate the precise situation that existed before any surrender of the note was made. In the present case, if, when the Interstate Bank first called up the Merchants Bank, it had been told that the check was worthless, and had then reclaimed the note, probably no contention would have been made that it had incurred any liability. This is for all practical purposes just what was done so far as the mere matter of time was concerned, for the delay was really insignificant. We are therefore of the opinion that the recaption of the note was accomplished under such

circumstances as to relieve the Interstate Bank of liability unless the matter is affected by its entry upon its books of a credit to the Watkins Bank and by its subsequent dealings with that bank and the Merchants Bank.

"We cannot regard this entry of credit upon the books of the Interstate Bank as any more determinative of its relations with the Watkins Bank than of the question of the payment of the note. In *Midland Nat. Bank v. Brightwell,* 148 Mo. 358, 71 Am. St. Rep. 608, 49 S. W. 994, it is said: 'When a note or draft is sent by one individual or bank to another bank for collection and to remit the proceeds to the sender, the relation of principal and agent is created, and not that of creditor and debtor. . . . Having received the note or draft for collection, it does not owe the amount thereof to the sender until collected, and though it may credit in its books therefor, such a credit may be treated as provisional if the paper is afterwards dishonored, and it may cancel the credit.' 'The fact that the depositor's account is credited with the amount of the items taken for collection does not of itself operate to transfer the title to the paper, for, by the custom of bankers, the collection is charged back at once if not paid.' 3 Am. & Eng. Enc. Law, 2d ed., p. 817. The fact that the credit was given only after the check had been received and an inquiry made about it does not affect the principle by which the matter is controlled. The bank might well elect to give credit only for such collection items as upon investigation it believed reasonably certain would be paid, and to hold others without credit until actual payment, without, by pursuing such course, binding itself to be answerable whenever its judgment that payment would be made should prove mistaken."

The *Merchants National Bank* case above cited is quite in point. In that case the plaintiff had paid the check of one Burgess drawn upon itself. At the time it honored the check, Burgess appeared to have a credit upon its books. This

proved, however, to be a false credit which had been obtained by the wrongdoing of Burgess. By this means the drawee bank was misled into the payment of the check, such payment being made to another bank, the defendant in the case. Immediately upon discovering the mistake, it tendered back the check and demanded a return of the money as having been paid by mistake. The recovery was allowed. In the *Steinhart* case above cited, a bank received a note for collection against one of its own customers. At the request of the customer, the collecting bank charged the amount of the note to his account and mailed a draft to the owner of the note. Immediately thereafter, it discovered the insolvency of the maker of the note and thereupon cancelled the credit and reclaimed the draft. The mistake in that case was induced by the implied fraud of the maker of the note in concealing his insolvency. Its right to make such cancellation and reclaim the draft was sustained.

Upon the record before us, it is our conclusion that the defendant in this case was within its rights in returning the Western Company's check and in reclaiming the plaintiff's note and that the plaintiff is not entitled to claim the affirmative benefit of the mistake.

II. The plaintiff in its reply pleaded an estoppel upon the defendant. The facts averred were that on August 2nd, the defendant began an attachment suit against the Western Company and the Michigan Company upon the two dishonored checks drawn upon the Kalamazoo banks. The contention is that it thereby elected a remedy which was inconsistent with its present position. The attachment suit was in fact subsequently dismissed. It is a sufficient answer to this contention that, prior to August 2nd, the defendant bank had already elected its present position and that it has maintained it ever since. If the doctrine of election of remedies is applicable to the case, its election of August 1st could have been pleaded

5. ESTOPPEL: election of remedies.

against it in the attachment suit as a defense. It naturally follows that such a defense could not be effective against both remedies.

There is a further consideration here that the defendant bank had a cause of action against the attachment defendants outside of the transaction involved in the $20,000 check. It had paid on the 1st of August over its counter, checks presented by other collecting banks in payment of other notes. These payments amounted to several thousand dollars. For such payments, the defendant bank had no other remedy, so far as appears in this record. This itself would have justified a suit, although it might be doubtful whether the checks themselves could have formed the basis of the cause of action. Be that as it may, the beginning of the suit worked no estoppel upon the defendant as against the remedy elected on August 1st.

We reach the conclusion that the judgment entered below dismissing the plaintiff's suit was proper and it is— *Affirmed.*

DEEMER, C. J., WEAVER, LADD, GAYNOR and PRESTON, JJ., concur.