Plaintiff, as transferee of a note and mortgage, executed by the defendants to one McClintok, seeks judgment against the defendants upon the note and a decree of foreclosure upon the mortgage. The facts are stipulated.
The note in suit was executed on July 26, 1917, in the sum of $2,200 payable to W.C. McClintok, at the Custer County State Bank at Miles City, Montana, due and payable on December 1, 1922, with interest at the rate of 6 per cent; the mortgage is dated on the same day and is in the usual form. In 1922, the debtors obtained an extension of time of payment for one year; at that time a coupon note was executed for an installment of interest, payable to the plaintiff, but without naming a place of payment. On or about September 12, 1923, the defendants paid to the First State Bank of Ruso, $1,000; and on October 2d, they paid to the same bank the sum of $550, such payments having been intended to be made upon the debt secured by the mortgage and evidenced by the promissory note. On May 2, 1925, the defendants tendered the plaintiff the sum of $837.56, sufficient to cover the balance due on the note provided the prior payments of $1,550 be credited upon the instrument. It is agreed that the payments aforesaid were received by the Ruso bank either as agent of the plaintiff or of the defendant. The Ruso bank became insolvent and did not remit to the plaintiff. The plaintiff has never met the defendants, or either of them, and has had no direct communication with them. The correspondence was conducted entirely by Oliver E. Odell, in behalf of himself and wife, and Andrews and Essington, of Rockford, Illinois, as attorneys for the plaintiff. The sole question, therefore, is whether the Ruso bank, acted as agent for the owner and holder of the note and mortgage, or for the defendants, obligors thereunder.
Plaintiff Burch was at all times herein mentioned a resident of Rockford, Illinois. On July 30, 1923, Odell wrote a Mrs. Williamson at Miles City, Montana, asking her to send the paper to the First State *Page 365 
Bank at Ruso "That I may make payment" thereon. In this letter Odell says "According to the agreement, I am to make payment at any time and interest will stop on amt. of payment. I am intending to ship cattle soon. I want the First State Bank of Ruso, Mr. L.A. Crowell being the President, to handle the matter here for me." On August 1, Mrs. Williamson forwarded this letter to counsel for the plaintiff at Rockford, Illinois, saying "I don't know just what he means as to the agreement, as this is one that was extended last fall, but I presume your client would be willing to give him a discount on the interest for any amount paid." On August 4, counsel for the plaintiff wrote Odell from Rockford, acknowledging receipt of the letter written by the latter to Mrs. Williamson. In this letter Odell is informed that counsel's client (plaintiff) is the holder of the note and mortgage and that if it could be understood that payment would be made, he could probably arrange with his client to forward the papers to the Ruso bank. He states, further, that he would not send the papers unless a payment were to be made. The letter then continues: "When you get in shape, so that you wish to make payment, kindly write me and let me know the amount and I will have the note sent up to the bank for purpose of endorsement." On August 6, 1923, Odell wrote counsel for plaintiff enclosing a letter from Mrs. Williamson which the writer said would explain the extension. The writer continues: "If papers are sent at once, I can pay about $1,000 now. . . . These papers were made in the first place through the First State Bank of Ruso and as my farm and stock are near there I want the papers sent there, if you please." On September 3, Odell wrote counsel saying, "Will you please write what arrangement has been made that I may make other payments which have been waiting since the middle of July . . . if you prefer, you can send the papers to the American State Bank of Balfour, instead of Ruso, let me know. A.L. Lombard is President of the American State Bank of Balfour. I do not thing I am getting the benefit of the agreement to pay at any time and stop interest. Thanking you for your prompt reply." On September 5, 1923, counsel for the plaintiff wrote Odell that he had made arrangements with plaintiff to send the papers to the Ruso bank if Odell was ready to make a payment. Counsel then calls attention to the fact that the paper is not payable at the Ruso bank and for that reason it became necessary for him to get the "consent of my client to send the same to *Page 366 
your bank instead of the bank which my client should select." On September 6, counsel for plaintiff answered Odell's letter of September 3, as follows: "I have had some difficulty about getting consent of client to send this paper. One of the objections has been that we have never had any positive statement from you that you are prepared to make payment. However, I have finally arranged so that we can send the paper to the First State Bank of Ruso with instructions to hold them to give you an opportunity to make payment on interest and principal. Paper will probably be mailed to that bank during the day today." On September 6, the same day counsel for the plaintiff forwarded the note in suit to the Ruso bank with the following letter: "In this matter our understanding is that Mr. Odell wishes to make a payment of $1,000, on account of principal. You will please accept any payment he may wish to make and make endorsement of such payment in his favor on the note and return the note to me with check or draft for amount paid. Mr. Odell should pay your charges as this paper is sent to your bank at his special request."
Counsel then asks that he be notified of the receipt of the papers and if payment be not made at an early date "I will request the papers to be returned, but will communicate with you again in that respect." On September 13, in answer to a letter of September 10 from Odell, counsel for plaintiff wrote Odell suggesting that if he could not go to Ruso to make the payment "let me know and I will ask the Ruso bank to send the paper to your bank at Balfour. At the time of sending I supposed it was your wish that the paper should go to Ruso." It appears from the defendant's letter of September 10, that he had transferred his activities to the vicinity of Balfour. He had been near Ruso when negotiations for payment were opened in July.
On October 3, 1923, counsel for plaintiff acknowledged receipt of a check for $1,000 from the Ruso bank to be applied on the Odell note. In the letter counsel says that his client consents to the bank's holding the paper for "a time to give Mr. Odell an opportunity to make further payments on interest and principal. That if such payment is not made within a reasonable time, we will prefer the note to be returned. . . ." On October 4, 1923, Odell notified counsel for the plaintiff that he had, on September 12, made an additional payment of $550 to the Ruso bank to be applied upon the note; and on October 8, 1923, counsel for plaintiff *Page 367 
acknowledged receipt of Odell's letter advising that payment of $550 had been made to the bank. Counsel says in this letter that he had not received remittance from the bank "but presume it will be in my hands soon." On October 8, counsel for plaintiff wrote the Ruso bank sending the abstract of title and requesting that the bank remit the payment of $550. On October 25, counsel for plaintiff notified Odell that the check sent by the Ruso bank for $1,000 had not been paid. Counsel suggested that Odell go to the bank and have the check paid and the $550 remitted. On the same date, counsel wrote the Ruso bank, calling attention to these facts and asking for an immediate return of the note and the abstract. On November 14, 1923, counsel who appear for the plaintiff in the present action made a written demand upon the Ruso Bank for a return of the papers. The bank closed after the payment had been made.
As heretofore stated, the controlling question is one of law. The decision of this appeal necessarily turns upon the question of agency. Whose agent was the Ruso bank? The coupon note which was executed in connection with the extension agreement is made payable to plaintiff Burch, but there is no place of payment specified therein. This coupon is for $132, representing an installment of interest upon the note in suit. The principal note was payable at Miles City, Montana, at the Custer County Bank; that bank became insolvent and closed in 1922, having ceased to operate as a bank prior to the date when the notes were due and payable.
It may be conceded, for the purposes of the decision, that the act of sending the note to the Ruso bank was in one sense an accommodation to the maker. On the other hand, sight must not be lost of the fact that the holder of the note was not a resident of the city or even of the state where the note was payable; and that the bank where presentment could have been made had passed out of existence as a functioning institution. The holder lived in Illinois; whether it was more or less convenient for her to designate a place of payment in North Dakota than it would have been in Montana, the record does not show. Of course, the maker could insist on paying the note at the defunct bank in Montana. He did not do so, but expressed a wish that the note be sent to a bank near where he was then working, to the end that he might make a payment thereon. It is not an unnatural inference that the holder of the note would prefer *Page 368 
to present it for payment at an open rather than a closed bank. No suggestion was made in the correspondence that in waiving the right to payment at the closed bank in Montana, the maker was surrendering a privilege which she esteemed valuable. We think upon the whole record, that it is a debatable question which party was accommodated by having the note presented for payment at the Ruso bank.
The Ruso bank was not the general agent of either party; it was the special agent of one of them. Such authority as the bank had was conferred "for a particular act or transaction." Comp. Laws 1913, § 6321. Whatever may be said respecting the soundness of an attempted distinction between special and general agency, the statute makes it, and the facts clearly bring the relation in the case at bar within the former definition.
In the circumstances disclosed in this case, we think that a persuasive test, for the purpose of determining for whom the Ruso bank acted, may be found in answer to the question: From whom did the Ruso bank receive authority to act in this special instance? The question really answers itself. The Ruso bank could not be authorized by the maker of the note to present it for payment, to receive payment, and to endorse upon it the payment made. The only person who could confer authority to do these things was the holder of the instrument. The record shows, of course, without dispute that the holder of the note sent it to the Ruso bank; instructed that bank to hold it, receive any payment thereon which the obligor might decide to make, to endorse such payments upon the instrument, and to transmit the money paid to the holder. These instructions appear either specifically in the correspondence or by necessary inference and implication from the instructions actually given. We do not believe that the answer to the question of who was accommodated by the waiver of the right to insist upon payment at the defunct bank in Montana, is of controlling importance. In the case at bar, the authority to act, with respect to presentment, possession and receipt of payment, was received from and given by the payee. It is of no consequence that the maker suggested the name of the Ruso bank to the holder; it was in the power of the transferee of the instrument to designate that bank, or any other local bank, or no bank, as she chose. Ordinarily the bank to which paper is sent for collection is the agent of the payee. She elected the bank named by the maker as her representative to present *Page 369 
the note, receive the money, endorse the payment on the instrument, and transmit the proceeds to her in Illinois. From the facts stipulated, it is impossible, without doing violence to the elementary rules of agency, to find any basis on which to rest a holding that the Ruso bank was the agent of the Odells.
We have found no case in the books identical in its facts with the case at bar. The authority deemed decisive by the plaintiff, is Virginia-Carolina Chemical Co. v. Steen, 34 L.R.A.(N.S.) 734 and note, 99 Miss. 504, 55 So. 47. In that case the plaintiff was a resident of Memphis, Tennessee, while the defendant did his business at a certain bank in Corinth, Mississippi. Sometime before the note became due the defendant requested the plaintiff to forward the instrument to a designated bank at Corinth for collection. The note was payable at the State National Bank, Memphis, Tennessee. The plaintiff as requested, forwarded the note; the defendant paid it at the bank in Corinth; and the latter institution, insolvency having intervened, never forwarded the proceeds to the plaintiff. The court held that the bank at Corinth was the agent of the maker of the note. The court say: "The appellant did not waive its right to have the note paid there. It was not asked to waive this right. It had no interest to serve for waiving the same. The appellant only acquiesced in appellee's selection of the Tishomingo Savings Institution as agent to receive the amount due on the note and forward same for him. Such acquiescence did not constitute the bank making the collection the agent of the appellant." It may be suggested, in passing, that acquiescence on the part of the payee in the selection of an agent by the maker to transmit funds with which to pay the note was wholly unnecessary. Had the maker assumed that such was the nature of the transaction, he could as well have sent a check or a draft to the bank at Memphis, Tennessee, where the note was payable. The court was apparently impressed with the idea that the payee was merely accommodating the maker by sending the note to the local bank; that it had no interest of its own to serve in doing so. One judge dissented.
In the case at bar there was clearly a waiver of the right to insist upon payment at the Montana bank. This conclusion is necessary in view of the conduct of the parties. Both payee and makers gave up — waived — a contractual right in this connection.
We are not prepared to concur, without reservations, in the view that *Page 370 
the payee in a note who resides in another state has no interest to serve in waiving the place of presentment for payment, when the place named in the instrument is in a state other than that of his or the maker's residence. We think circumstances may easily be imagined where it would be both advantageous and convenient for the payee to waive the place of payment and authorize an agent to present it at a different place. Such a test of convenience is unsatisfactory, if a test it can be called. We think that the sounder rule is the one which we have applied to the facts in the case at bar. The source of the authority exercised by the Ruso bank in the transaction with the Odells ought to point unerringly to the principal. It is not suggested that the Odells acted fraudulently or from any motive other than a desire to exercise their right under the contract to pay and stop interest. There is no intimation that they had any suspicion that the Ruso bank was tottering on the verge of insolvency. It may be that if fraud were shown or knowledge of facts and circumstances amounting to fraud or bad faith, that the Odells could be held liable for whatever damages the plaintiff may have suffered by reason of their conduct. That question is not here. In the absence of fraud or bad faith, the relation between the plaintiff and the Ruso bank must be held to be that of principal and agent.
Agency imports delegated authority; and of course it implies that the principal has reposed some trust or confidence in the agent. Here the holder of the note unquestionably put her confidence in the Ruso bank, at least to the extent of giving it possession of the note with the authority to receive the payment which the Odells were prepared to make. It was the duty of the holder to present the instrument; the makers were not bound to pay unless the note was in the possession of the person to whom payment was to be made; and it could not lawfully come into the possession of a person for collection except by the deliberate and voluntary act of the holder. The fact that some suggestions were made by the maker which induced or influenced the holder to send the note to the Ruso bank for collection, does not alter the essential character of the transaction. A principal, in the law of agency, is the person for whom another acts and from whom hereceives his authority to act. In the instant case the Ruso bank obtained its authority to present the note, to receive payment, to endorse the *Page 371 
amount paid on the instrument, and to transmit it to the holder, not from the obligor, but from the plaintiff. It was clearly plaintiff's agent.
Moreover, the parties seem to have acted in accordance with ordinary business custom. It is a common practice, so well known that we may notice it judicially, for nonresident holders of notes to send them to local banks for collection giving notice to the debtor that the instrument may be paid at the designated place, notwithstanding another may be stipulated in the paper; and frequently resident makers, or parties acting in their behalf, suggest the names of local financial institutions at which payment can conveniently be made. It is safe to say that no one ever supposed that the local bank, thus coming in possession of promissory notes, is the agent of the obligors. Assume in the case at bar that the Ruso bank had forwarded a check for the money paid by the Odells; that the next day the Odells had changed their minds and decided that they did not want to pay and had requested the Ruso bank to return their money; and that the bank had thereupon stopped payment of the draft, and the Odells had thereafter become bankrupts. The plaintiff would then be here asserting that the Ruso bank was her agent and without authority to return the money to the makers of the note. Of course her position would be sound and the Ruso bank would be liable for damages resulting from the unauthorized return of the payment made.
The judgment is reversed and the action is dismissed.
CHRISTIANSON, Ch. J., and BURKE, BIRDZELL, and NUESSLE, JJ., concur.