GREEN, Respondent, v. SCHMITT, et al, Appellants.

·(230 N. W. 233.)

(File No. 6447.   Opinion filed Apr. 11, 1930.)

*M. Q. Sharpe,* Attorney General, and *E. D. Roberts,* Assistant Attorney General, for the State.

*Miller & Lund,* of Colome, and *M. Q. Sharpe,* Attorney General, for Appellants Schmitt, Archie L. Crichton, and Florence M. Crichton.

*Stephens, McNamee, O'Keeffe & Stephens,* of Pierre, for Respondent.

See Green v. Bartine, 50 S. D. 281, 209 N. W. 650.

CAMPBELL, J. Facts material to the controversy between the parties to this litigation appear substantially as follows: Prior to November 1, 1919, the plaintiff, Green, was the owner of a tract of land in Lyman county, S. D., approximating 345 acres. On that date Green sold the land to the defendant Schmitt for the sum of $26 per acre, taking from Schmitt, as part of the purchase price, his promissory note for $3,889.22, dated on that day and due November 1, 1922, payable at Citizens' Trust & Savings Bank of Davenport, Iowa, where Green resided, which note was secured by first mortgage, Schmitt to Green, bearing even date with the note, and mortgaging the entire tract sold. At or prior to the time of executing and delivering this note and mortgage defendant Schmitt had received from plaintiff, Green, a warranty deed to the premises, together with an abstract of the title thereof, and appears to have accepted and approved the title. Some time later there seems to have arisen between Schmitt and Green some question with reference to the title to the premises and the loss of an abstract, which appears to have been settled between them by Green's agreement to contribute to Schmitt the sum of $50 to pay

for or apply upon expense he might be put to in that connection. The note and mortgage from Schmitt to Green were not paid when due, and there appears to have been some correspondence between the parties, Schmitt writing from time to time that he would soon pay, and apparently making no further suggestion of counterclaim, defense, or offset. Finally Schmitt appears to have conceived the idea that he would sell a part of the land to his codefendants Crichton and wife, and that he and Crichton would each apply to the rural credit board for loans upon their respective tracts, the proceeds thereof to be used to pay off the Green mortgage, which by this time amounted to a little over $4,500. Accordingly, it seems to have been agreed between Schmitt and Crichton that Schmitt would convey to Crichton approximately 160 acres of the land in question; that Crichton would apply to the rural credit board of the state of South Dakota for a loan on said 160 acres in the amount of $2,600; that Schmitt would make similar application for a loan of $2,000 on the portion of the premises that he retained; that the proceeds of these two rural credit loans would be used to pay off the Green mortgage, which was an incumbrance upon the entire tract, and that Crichton and wife, as further consideration for the 160 acres to be conveyed to them, would give to Schmitt a note for $2,750 secured by a mortgage on the 160 acres they were receiving from Schmitt, which mortgage (when the Green mortgage had been paid and Crichton's rural credit mortgage had been placed of record) would constitute a second mortgage on the 160-acre tract. Whether Crichton was to make any other or further payment to Schmitt the record does not indicate.

This arrangement having been arrived at between Schmitt and Crichton, both Schmitt and Crichton made written application to the rural credit board for a real estate loan, Crichton asking for a loan of $2,600 on the 160-acre tract he was to get from Schmitt, and Schmitt asking for a loan of $2,000 on the residue of the land he had purchased from Green which he was retaining. Each application stated that the loan thereby requested was desired for the purpose of paying a mortgage on the land, and stated that said mortgage was payable to Jerry S. Green, Davenport, Iowa. Each application further stated that the applicant desired to close the loan at the Reliance Savings Bank of Reliance, S. D.

When the title examiners for the rural credit board came to investigate these applications for loan, they appear to have raised some objection to the title. The validity of that objection does not appear from the record, nor does it appear whether or not it was anything for which plaintiff, Green, could have been held originally, or, if so, whether any right to hold him had been waived by acceptance of the title. Neither does it appear that any demand was made upon him with reference to the matter to any extent beyond what was met by his offer to pay the sum of $50, and it appears from the record and from evidence introduced by defendants themselves that, when Green offered to pay or allow said sum of $50, he believed, and had ample reason to believe, that he was fully complying with all demands of the defendant Schmitt and satisfying all claims of the defendant Schmitt with reference to this title. Schmitt appears to have advised the plaintiff, Green, from time to time that he was arranging for money to pay the mortgage and would presently have it, etc. Finally the rural credit board was ready to close the Schmitt and Crichton loans, and, under date of October 23, 1923, the rural credit board forwarded to Reliance Savings Bank (where applicants had requested that the loans be closed) the papers relating to the Schmitt and Crichton loans, together with two checks, one for $2,000 and one for $2,600, and an instruction letter to the bank covering each loan. The instruction letter covering the Schmitt loan was as follows (italics ours):

'State of South Dakota
Rural Credit Board
Pierre

"October 23, 1923.

"Reliance Savings Bank, Reliance, South Dakota.

"Gentlemen: In Re A No. 17445, $2.000.00, George A. Schmitt covering E½ NE¼ 6-108-73 and W½ SE¼, SW¼ NE¼, W½ NW¼ NE¼ 32-109-73 in Lyman County: We are enclosing the following papers in the above loan: $2000.00 Note, mortgage securing same, abstract of title and check for $2000.00.

"Please have the note and mortgage executed by George A. Schmitt and Noma Schmitt and return the note to us as soon as signed, and the mortgage as soon as recorded. Attach to the note forty cents in revenue stamps. Call the mortgagor's attention to the fact that the interest on this note is payable semi-annually.

"According to the abstract and the attorney's opinion attached thereto, *the title is in George A. Schmitt subject to a mortgage of $3889.92* abstracted at No. 14 and the real and personal tax of 1922. *This mortgage must be satisfied of record* and the tax paid in full. *The check for $2000.00, which is enclosed, is not to be cashed until you have in your possession all the papers to be used in the closing of this loan.*

"*These funds are to be used to take up the existing mortgage,* and we are enclosing a blank to be filled out by you showing them so used. It is understood that the applicant is to pay all the expense contracted in making this loan.

"When the papers are complete, please have the abstract continued showing our mortgage the first lien of record, and return the same to this office for our files.

"*We are holding your bank responsible for the closing of this loan according to this letter of instructions,* and the Board reserves the right to cancel this loan, and recall the papers and our check, if it is not closed within the next forty days in accordance therewith. Please acknowledge receipt of the enclosed papers."

The instruction letter covering the Crichton loan was identical, excepting that it differed appropriately as to the amount of the loan, the names of the borrowers, and the description of the tract covered. The Reliance Savings Bank was the bank where Schmitt was accustomed to transact business. It was not a bank where plaintiff, Green, did business.

Meantime, both Schmitt and Reliance Savings Bank had written plaintiff, Green, stating that the money to pay his mortgage was, or soon would be, in Reliance Savings Bank, and requesting him to send a release of his mortgage to that bank for payment. He had refused so to do on the ground that his mortgage was payable at the bank at Davenport, Iowa, and that the money should be sent there, and, when received, release would promptly be furnished. Finally, and after receiving the two checks from the rural credit board, the Reliance Savings Bank wrote Green, informing him that the money was at their bank to pay his mortgage, and that the laws of South Dakota provided that, where the state made a loan, the deal must be closed in the county where the loan was made. The banker testified that, in thus endeavoring to get Green to send his release to the Reliance bank for payment, he was acting,

in his opinion in behalf of the rural credit board, or Schmitt, or both. After receiving this letter from the bank, Green, apparently with some reluctance, but, as he says, "wishing to comply with the law," sent his release of mortgage to the Reliance Savings Bank, under cover of a letter written in his behalf by the Citizens' Trust & Savings Bank of Davenport, Iowa, where his note and mortgage were payable according to their terms, which letter was written and mailed November 6, 1923, and was as follows:

"November 6, 1923.
"Reliance Savings Bank, Reliance, South Dakota.

"Gentlemen: Mr. Jerry S. Green of this city has instructed us to send you for collection a mortgage which he has in the name of George A. Schmitt for $3889.92 and interest coupon of $233.40 that was due on November 1, 1922, and interest of $388.99 being interest from November 1, 1922, to November 1, 1923. Additional interest from November 1, 1922, to date of $31.26. You will notice that we have figured interest that is past due at the rate that mortgage draws or 10%. This makes a total due of $4,543.57.

"You can deduct $50.00 for fixing the abstract and you are not to turn over the papers until you receive a draft of $4,493.57. When you receive the draft, turn over the mortgage, mortgage note, warranty deed and release but not until you receive the above stated amount.

"There is to be no collection charge unless it is paid by Mr. Schmitt as the draft is to come here net. If you do not receive a draft on or before ten days, return papers to us."

Meantime, the Reliance Savings Bank, on the day that they received the two checks from the rural credit board (probably October 24, 1923), instead of holding the checks until all settlement papers were in their hands, as the instruction letters directed, had credited the amount of the two checks on their books to an account denominated "Geo. Schmitt—Special," and had immediately transmitted said checks for collection and clearance in the usual course. Where the proceeds of the two rural credit board checks were, in actual fact, when the release of the Green mortgage was received by the Reliance Savings Bank, does not appear in this record.

On the morning of Saturday, November 10, 1923, the defendant Schmitt was in the town of Reliance, and the president of the Reliance Savings Bank telephoned to a nearby town and requested

one Miller, who was Schmitt's attorney, to come to Reliance, which Miller did. Thereupon Schmitt and his attorney, Miller, went to the Reliance Savings Bank. The books of the Reliance Savings Bank on that day showed a credit to the "Geo. Schmitt—Special" account in the amount of $4,600, ostensibly representing the proceeds of the two rural credit checks cashed by the bank October 24, previously. Whether the proceeds of those checks were actually in the bank on that day does not appear, nor does it appear how much, if any, money applicable to payment of checks in ordinary course was actually in the vaults of the Reliance Savings Bank on that day. Crichton was not present, and appears to have left the entire handling of the transaction throughout, so far as he was concerned, in the hands of Schmitt and the Reliance Savings Bank. Neither was there present any representative of the rural credit board or of the plaintiff, Green, beyond the extent to which they may have been represented by the Reliance Savings Bank. There were in the Reliance Savings Bank that morning the following documents: First, the release of plaintiff's (Green's) mortgage with the instruction letter accompanying it; second, the deed from Schmitt to the Crichton's for the 160 acres which the Crichtons were to get; third, the note and mortgage covering the Rural Credit loan to Schmitt, together with the instruction letter from the Rural Credit Board relating thereto; fourth, the note and mortgage covering the Rural Credit loan to Crichton, together with the instruction letter from the Rural Credit Board relating thereto; fifth, the note and second mortgage running from Crichton and wife to Schmitt; sixth, abstracts of title to the premises.

Thereupon Schmitt gave to his attorney Miller a check for $50 drawn against the "Geo. Schmitt—Special" account. He gave to Brown, president of the Reliance Savings Bank, a check signed by himself, Schmitt (presumably drawn against the "Geo. Schmitt—Special" account) drawn upon the Reliance Savings Bank, payable to the order of the Reliance Savings Bank, in the amount of $4,493.57, being the amount necessary to pay the Green mortgage in full, per Green's instruction letter of November 6, less the $50 deduction permitted by said instruction letter, which deduction Schmitt had apparently turned over to his attorney, Miller. Thereupon the Reliance Savings Bank delivered to Schmitt's attorney, Miller, the release of the Green mortgage, the mortgages from

Schmitt and Crichton to the rural credit board, the deed from Schmitt to Crichton, and the mortgage from Crichton to Schmitt, together with abstracts of the premises, and Miller subsequently recorded all these documents and had the abstracts continued to show the same.

The Reliance Savings Bank did not open any account with plaintiff, Green, or credit him in any way with Schmitt's check for $4,493.57. Neither did the bank debit said check to any account upon its books. Neither did the bank make any attempt to draw a draft or in any manner make remittance to Green, but the check, signed by Schmitt and payable to the bank was merely left lying in the bank. Several hours later, and on the same day, the attorney, Miller, served on the Reliance Savings Bank an affidavit and summons in garnishment in an action entitled in the circuit court in Lyman county, S. D., wherein Schmitt (defendant herein) is named as plaintiff, and Green (plaintiff herein) is named as defendant, and the Reliance Savings Bank and the Citizens' Trust & Savings Bank of Davenport, Iowa, purport to be named as garnishees. The affidavit in garnishment is made by Schmitt, and recites that Green is indebted to him in the sum of $650 upon a breach of warranty of title. No other papers appear ever to have been prepared or served in said garnishment action, nor anything done concerning it, except as hereinafter recited. The Reliance Savings Bank made no effort to remit to Green, although it had ample time to draw and mail a draft before the service of the garnishment papers, and made no attempt to advise him of the situation in any manner whatsoever. One week later, on Saturday, November 17, 1923, the Reliance Savings Bank, being hopelessly insolvent, was closed for liquidation and taken in charge for that purpose by an examiner acting for the state superintendent of banks. When the examiner took possession of the bank, he found still lying about the bank, and not entered in any manner on the books of the bank, the check for $4,493.57, signed by Schmitt, hereinbefore referred to, and the examiner on November 17 caused the check to be debited to the "Geo. Schmidt—Special" account and credited to an account denominated "Sundries."

The first notice of any kind which the plaintiff, Green, received regarding the situation, after sending his release of mortgage with his instructions to the Reliance Savings Bank under date

of November 6, 1923, under the circumstances hereinbefore set out, was when he received from Schmitt's attorney Miller, about November 24, 1923, a letter bearing date November 22, 1923, and reading as follows:

"Jerry S. Greene, Davenport, Iowa.

Dear Sir: Some time ago you sent a note and mortgage to the Reliance Savings Bank at Reliance, S. D., to be turned over to George Schmitt upon his paying you a certain sum of money. George Schmitt borrowed and turned over to the Reliance Savings Bank the sum of money called for in your letter and then on behalf of Mr. Schmitt I garnisheed the entire amount due you, being something like $4,400 or $4,500. I started suit against you on behalf of George Schmitt to recover the sum of $650 which Schmitt is damaged by reason of your giving him a poor title on that Little Bend land. If Schmitt's title had been in good shape he would have gotten his loan through and had the money before your mortgage was due and would not have been obliged to pay you the 10% on the amount of your note after it was due. We notice that in your letter of instructions to the Reliance Savings Bank from your bank there in Davenport that you figure 10% against George Schmitt on the entire amount of that claim. The delay in getting your money was made necessary solely because you gave him a poor title and the matter of 4% difference between the rate of interest that he should have paid you 6% and the amount he actually did pay you, 10% amounts to something like $180 and we propose to hold you for that sum of money. Another matter: On account of the defect in the title which you gave Schmitt he was obliged to quiet the title and George Schmitt paid to us for quieting the title and for abstract fees on that land the sum of $332, practically all of which was made necessary solely because the title was not in good shape. We can show you itemized statement for every item making up that bill. The balance of the amount sufficient to make it come to $650 is made by reason of the damages that Schmitt himself has suffered. The trips he has been obliged to make in getting this straightened up and is simply general damages for the defect appearing in your title. He has been out in cash the sum of $412 by reason of your title being defective and he has been out in trouble and annoyance something like $238. Now we would like to hear from you as to how you feel about

settling up this matter. In case that we can make a peaceful settlement of the difference between you and Schmitt on this land deal we are willing to simply divide the loss and have you settle for $325. Please write and let us know if that is satisfactory to you.

"Since the time that we garnisheed the Reliance Savings Bank the bank has been closed by the state banking department along with the $4500 of your money that was in there in the form of a draft. You are fully protected in the matter and will eventually get your money out of it but we believe it would be advisable for you to make a settlement with Schmitt so that you can put in your claim for the exact amount due you. Please advise your views."

Green, upon receipt of this letter, took the matter up with an attorney in South Dakota to try to ascertain what the situation was, and Green's attorney started to investigate the matter and took it up with Miller, Schmitt's attorney, and there was talk concerning settlement and adjustment, and finally, after some discussions between the attorneys, and after some correspondence back and forth between Green and his attorney, Green authorized his attorney to adjust the matter, if possible, by a compromise of the garnishment action, which authority was in the form of a letter reading in part as follows:

" * * * Now, what I want you to do is, to try to settle on that basis as per their agreement. If not make it $75.00, if not that try $100.00. If the money is available and only this unjustly charge of theirs is the only thing that prevents you having it sent direct to me at once, or the Citizen's Trust & Savings Bank of Davenport, then if you have to as the last resort give them the $325.00 of blood money they demand, but I trust you as your brother assured me, would treat me right, and I feel you will, be able to compel them to show a semblance of justice.

"My bank here was in long distance communication with your State Bank Examiner who gave his assurance that I was protected, and that they could not use my money in the bank. * * * "

This letter was introduced in evidence by the defendants. Pursuant to the authority of this letter, and not otherwise, as he testified when called as a witness by the defendants, plaintiff's attorney signed a document denominated "Stipulation of Settlement," which was entitled in the same court as the garnishment process previ-

ously referred to in Lyman county, S. D., and purported to be in an action wherein Schmitt was plaintiff and Green was defendant, and which reads as follows:

"Whereas, the above-named defendant has a claim against the Reliance Savings Bank of Reliance, South Dakota, for more than $4,000.00, the same being money due to the defendant, Jerry S. Green, from the said bank on a collection of a mortgage made by the said bank from the plaintiff; and whereas the plaintiff has a claim against the defendant in the sum of $650.00 for breach of warranty in a warranty deed and on account of defective title to real estate deeded by the defendant to the plaintiff, and whereas the said plaintiff by legal process has attached the debt due and owing to the defendant, from the Reliance Savings Bank, now therefor all the differences between the plaintiff and the defendant growing out of the said land deal and mortgage are hereby settled as follows:

"The plaintiff hereby stipulates and releases all his claims against the defendant of whatsoever kind or nature, and does release and discharge the garnishment and attachment heretofore made in said action.

"The defendant hereby stipulates and releases all his claims against the plaintiff of whatsoever kind or nature, and does agree to. allow the plaintiff the sum of One Hundred Fifty Dollars ($150.00) out of his claim against the Reliance Savings Bank and does hereby direct to said Reliance Savings Bank to pay to the plaintiff the sum of $150.00 out of his said claim and deduct the same."

On December 6, 1923, and apparently very shortly prior to the execution of the foregoing stipulation of settlement, Green's attorney wrote Green in part as follows; the letter being introduced in evidence by defendants:

"I agreed upon a settlement with Schmitt by allowing him the difference between six per cent and ten per cent on the mortgage, which amounts to something like $160 and he is to pay all of his own costs otherwise. This was the very best settlement I could get and I consider it reasonable under the circumstances. This settlement was made on the express condition that we could get the money from the Reliance Savings Bank and if we could not get the money this was not to be a settlement."

The Reliance Savings Bank has paid nothing to any of the parties, and the inference from the entire record is that it has nothing with which to pay, and will pay nothing.

Thereafter, and in October, 1924, plaintiff instituted the present action, wherein, after setting out the facts in considerable detail, plaintiff sought the following relief:

"1. That the satisfaction of mortgage, executed by him to George A. Schmitt, dated November 6, 1923, recorded November 13, 1923, at 11:05 o'clock A. M. in Book 50 of mortgages on page 569 in the office of the Register of Deeds of Lyman County, South Dakota, and the record thereof, be cancelled, annulled and held for naught.

"2. That it be, further, adjudged and decreed that the mortgage, dated November 1, 1919, executed by George A. Schmitt to the Plaintiff, recorded in Book 68 of Mortgages on page 270 in the office of the Register of Deeds of Lyman County, be restored as a valid mortgage constituting a valid and subsisting lien upon the premises therein described.

"3. That it be, further, adjudged that the lien of the Plaintiff's said mortgage is superior to the alleged mortgage liens of the State of South Dakota and the Defendant, George A. Schmitt, and that the title of Archie L. Crichton in the lands described in the deed to him and covered by said mortgage is encumbered by and subject to the Plaintiff's mortgage, and that the Plaintiff's mortgage constitutes a valid and subsisting lien thereon.

"4. That the Plaintiff have his costs and disbursements herein, including Attorney's Fees, and such further relief as to the court may seem just."

Defendant Schmitt pleaded payment of plaintiff's note, and pleaded settlement between the parties, and counterclaimed for $600 damages for breach of warranty of title on the original sale Green to Schmitt. Defendants Crichton pleaded title to themselves in the 160-acre tract conveyed by Schmitt to them, free of any lien of plaintiff's mortgage, and the defendant State of South Dakota pleaded the priority of the two rural credit mortgages as against any claim of plaintiff. To the counterclaim of defendant Schmitt plaintiff duly replied, and, upon the issues so framed, the matter came on to trial to the court.

Findings and conclusions were in favor of plaintiff upon all

the issues, and judgment was duly entered thereon in favor of plaintiff awarding him the relief sought by his complaint as against all the defendants, from which judgment and from a denial of their joint application for a new trial defendants have jointly appealed.

■ Appellants earnestly contend that the so-called "Stipulation of Settlement" above set out should bar respondent from any relief in the present action. We are unable to agree to the correctness of such contention. Whatever this agreement may have amounted to, it was between respondent and appellant Schmitt only. Appellants themselves have clearly and conclusively proved that it was authorized by Green, conditioned absolutely upon the premise that there was available at that time in Reliance Savings Bank for delivery to him the sum of $4,493.57, and that the only thing that was preventing or delaying the payment of that amount of money to him was the garnishment claim interposed by appellant Schmitt. That was the plain inference from the representations made to respondent by Schmitt's attorney in his letter of November 22 above set out. Respondent Green was a considerable distance away. His release of mortgage had been turned over to adverse parties and placed of record and a deed and two other mortgages subsequently recorded. Just what the inside facts of the situation were he did not know. He had received no money. Certainly his condition was not enviable, and it would mean both trouble and expense to ascertain just what his actual rights were in the premises and what might be the best thing for him to do. If he thought, as he might well believe from the assurances of Schmitt's attorney, that the money which he should have received for his release of mortgage was in the bank at Reliance, and that the only thing that kept him from getting it was the garnishment action of Schmitt, it is entirely conceivable that he might prefer to dispose of the matter by submitting to the payment of a reasonable amount of "blood money," and getting the rest of the money into his hands as stated in his letter to his attorney on November 28 above quoted, rather than to expend the time, money, and effort, and run the risks involved in attempting to ascertain and enforce his precise legal and equitable rights against all parties concerned. His agreement to settle the matter on that basis was clearly and positively conditioned upon the fact premise that the money was in the bank at Reliance, and available, and that, if he paid the "blood money" and settled the gar-

nishment action, he would very presently receive in cash the residue of the fund to which he was entitled. It appears very clearly from this record that this condition, expressly subject to which Green made the so-called settlement, was at all times a condition contrary to fact, regardless of the belief of any of the parties. The condition having failed, or rather never having existed in fact, the so-called settlement between Green and Schmitt was in all things abrogated. Certainly appellant Schmitt recognized that it was abrogated when in the present action he counterclaimed for $600 damages for breach of warranty, which claim would have been entirely barred by the so-called settlement if it had any binding force whatever. Under the facts and circumstances of this case, we are of the opinion that this conditional settlement was of no force or effect, and that it cannot be held to amount to an election upon the part of Green or to a waiver of any of his rights, or to a ratification of any unauthorized acts of Reliance Savings Bank, and that it should be treated as a nullity in the present action.

Respondent contends, and the learned trial court held, both as a finding of fact and a conclusion of law, that, inasmuch as respondent sent his release of mortgage to the Reliance Savings Bank for collection at the instance and request and for the benefit of appellant Schmitt, and indirectly for the benefit and convenience of the other appellants, said Reliance Savings Bank never became the agent of respondent to receive payment, but was, as a matter of fact, and law, the agent of appellant Schmitt to make payment, and that, so far as respondent is concerned, and as against all the appellants, payment could not be held to have been made until appellant's agent, the Reliance Savings Bank, caused money in the proper amount to reach the hands of respondent at Davenport, Iowa.

We are unable to adopt this view of the law. We know of only one case wherein the doctrine thus stated receives complete support, being the case of Virginia-Carolina Chemical Co. v. Steen (1911) 99 Miss. 504, 55 So. 47, 34 L. R. A. (N. S.) 734. Counsel have not called to our attention any other cases which clearly and unequivocally assert this position, nor have we ourselves discovered any. It is to be remarked that the Mississippi Supreme Court at the time of that decision consisted of three judges, one of whom dissented on this point. A sounder view and one more in accord

with established principles is promulgated, we think, in the cases of Burch v. Odell (1926) 54 N. D. 363, 209 N. W. 792, 55 A. L. R. 1162; and Wagner v. Spaeth (1927) 36 Wyo. 279, 254 P. 123 (affirmed on re-hearing, 37 Wyo. 1, 257 P. 5), both of which cases discuss the Virginia-Carolina Chemical Case, refuse to follow it, and definitely repudiate its doctrine. See, also, Marland Refining Co. v. Penn Soo Oil Co., 54 S. D. 10, 222 N. W. 594, where this court refused to apply the rule of the Virginia-Carolina Chemical Case to a situation differing somewhat in point of fact but not materially as to legal principles involved. If ever there was, as some cases would appear to indicate, an established rule of the law of agency which rendered it impossible for a third party to be at the same time an agent for each of two other parties with reference to various phases of a transaction between such two parties (which we seriously doubt, but need not here discuss), the current custom and practice of modern business must be held to have abrogated and destroyed it. See Wagner v. Spaeth, supra. See, also, Cosmopolitan Trust Co. v. Leonard Watch Co. (1924) 249 Mass. 14, 143 N. E. 827. It very frequently happens that two or more parties to a proposed transaction desire for their mutual convenience, with full knowledge of all, and usually without their personal presence, to consummate the final details of the transaction, for the security of all parties, at a bank and through the agency of that bank. In such case the bank is the agent of the various parties respectively according to the authority which each may have conferred upon the bank, and acts of the bank in the scope of each of its several respective employments in the nature of agency must be attributed to each principal severally, and the established principles of agency apply throughout with reference to the several agencies.

In the instant case it was presumably for the convenience, accommodation, and security of all parties, in greater or lesser degree, that a series of contemplated transactions, as a practical matter, more or less dependent one upon the other, should be finally consummated at substantially one and the same time and place. Respondent, Green, wanted his money. Appellant Schmitt wanted to sell part of the land to Crichton and make a new loan, which he could not do until the Green mortgage was satisfied of record. Appellant state of South Dakota, by its rural credit board, desired,

or at least was willing, to loan money to appellants Schmitt and Crichton, provided the Green mortgage was first duly released. Schmitt and Crichton wanted to use the money about to be received from the state of South Dakota to pay off the Green mortgage; payment of which was a condition precedent to, or at least concomitant with, the receipt of the money. All parties were accommodated (respondent, Green, perhaps least and appellant Schmitt undoubtedly most) by selecting a single time and place for closing all the transactions. We think that it must be held that respondent, Green, under the circumstances here shown, authorized Reliance Savings Bank as his agent to receive the money due upon his mortgage, and, upon receiving payment, to surrender the satisfaction piece. See Wagner v. Spaeth, supra; Burch v. Odell, supra; Marland Refining Co. v. Penn Soo Oil Co., supra; Manley v. Bidwell, 53 S. D. 282, 220 N. W. 482.

■ It follows, therefore, that the learned trial judge was wrong in so far as he adjudicated this cause upon the theory that Reliance Savings Bank never became the agent of respondent, Green. However, if, upon the record before us, it affirmatively appears that the result reached in the court below is correct, the judgment should be affirmed, notwithstanding the fact that it may have been arrived at by proceeding upon an erroneous theory. Corsica State Bank v. Heezen, 54 S. D. 113, 222 N. W. 671, and cases cited.

It becomes necessary, therefore, to give some consideration to the question of the rights of the respective parties upon the record before us upon the assumption that respondent, Green, as a matter of fact and law, designated Reliance Savings Bank as his agent to receive payment, and, upon receiving payment, surrender the release of mortgage.

■ We will give our attention, first, to the respective rights of respondent, Green, and appellant state of South Dakota. These parties are equally innocent. There is no suggestion of fraud or wrongdoing upon the part of either. Each reposed some degree of confidence in Reliance Savings Bank, and each constituted said bank an agent for certain purposes and to a limited extent. Within the scope of the respective agencies, knowledge of the Reliance Savings Bank must be imputed to the respective principals. The record before us shows very plainly that the rural credit board

knew at all times that the purpose of applying for the loans in question on the part of Schmitt and Crichton was to secure money to pay off the Green mortgage, of the existence and record of which the rural credit board had full and complete actual, as well as constructive, notice. The rural credit board knew that its mortgages could not become first liens until the Green mortgage was satisfied. . The rural credit board knew that satisfaction of the Green mortgage was to be procured by payment to Green. The rural credit board knew, as a matter of fact, that the very money which it was advancing upon the Schmitt and Crichton loans was the identical money which was to be paid to Green whereby his mortgage would be released and satisfied, and the rural credit mortgages might be first liens upon the premises. Under the circumstances of this case, the rural credit board could not claim that it was entitled to satisfaction of the Green mortgage if, to its knowledge (actual, or imputed through the knowledge of its agent Reliance Savings Bank) such satisfaction had been obtained without respondent, Green (or his collection agent Reliance Savings Bank in his behalf), having first received payment out of the money being furnished by the rural credit board. If the rural credit board or its agent, Reliance Savings Bank, was chargeable with knowledge that the satisfaction of the Green mortgage had been procured without causing payment to be made to Green or to his agent, Reliance Savings Bank, then, so far as appellant state of South Dakota is concerned, respondent Green is entitled to have the satisfaction canceled and his mortgage reinstated. On the other hand, if payment of the amount due Green was in fact made to Green's collection agent, Reliance Savings Bank, at or before delivery of the satisfaction piece; then, as between respondent, Green, and appellant state of South Dakota, respondent, Green, is not entitled to have his satisfaction canceled and his mortgage reinstated, or, rather, he is not entitled to have it reinstated as a lien prior to the lien of the rural credit mortgages.

Was payment made? As hereinbefore fully set out, the only thing received by Reliance Savings Bank as agent of Green at the time it parted with the satisfaction of the Green mortgage was a check signed by Schmitt, payable to the order of Reliance Savings Bank in adequate amount. Knowledge of this fact must be imputed to appellant State of South Dakota by reason of the actual

knowledge of its agent, Reliance Savings Bank. When a bank authorized to make collection receives and accepts a check drawn upon itself, such check is payment if the drawer of the check has credit with the bank to the extent of the check, and if, as a matter of fact, there is money in the bank to meet the check. Marland Refining Co. v. Penn Soo Oil Co., 54 S.D. 10, 222 N.W. 594, supra; Wagner v. Spaeth, supra, 36 Wyo. 279, 254 P. 123. In the instant case the drawer of the check had credit with the bank to the amount of the check in the "Geo. Schmitt—Special" account. Whether there was money in the bank to pay the check on Saturday, November 10th, when it was given, does not appear from the record in this case, excepting as it may be inferred prima facie from the fact that Reliance Savings Bank was apparently open for business on that day. This inference is, of course, rebuttable by showing. the actual fact, if it was otherwise, but we think, as pointed out in Wagner v. Spaeth, supra, that the burden of proof in that regard is upon the party claiming that payment was not made. The bank, of course, knew the actual facts, and its knowledge is imputed to appellant state of South Dakota.

We come now to consider the relative rights of respondent and appellant landowners. We may first say that upon the record in this case it appears that appellants Crichton seem to have been entirely satisfied to leave the handling of the entire matter in their behalf to Reliance Savings Bank and to appellant Schmitt. We think that the Crichtons, upon this record, are chargeable with all knowledge and all acts of appellant Schmitt, and that their rights as against respondent can be in nowise superior to his, and the question at issue here as to all of these appellants may properly be decided by determining the respective rights of respondent, Green, and appellant Schmitt.

Of course, if, as a matter of fact and law, payment of the amount due Green was not made to Reliance Savings Bank by the Schmitt check, as above discussed, then manifestly respondent is entitled to prevail against appellant Schmitt as he would be entitled to prevail against appellant state of South Dakota. However, as we have pointed out, the fact inference from the present record is that the Schmitt check was payment, the inference being subject to rebuttal by proof of the facts if sufficient actual money was not in the bank at the time the check was given and received,

properly and lawfully applicable to the payment of said check, to pay the same in full. With reference to the appellant Schmitt, however, there are further factors to be taken into consideration. It is entirely apparent from the record in this case that appellant Schmitt knew that the money was payable to Green in Davenport, Iowa, and that Green wanted it paid there. It further appears very plainly that appellant Schmitt conspired with Reliance Savings Bank to lead Green to believe that it was necessary to send his release of mortgage to Lyman county, S. D., for collection, and that Schmitt and Reliance Savings Bank fraudulently conspired together to get the release of the Green mortgage in the Reliance Savings Bank to the end that Schmitt might get both the release of mortgage and the money to pay the same under the control of himself and his fellow conspirators, procure the satisfaction of mortgage to be recorded, convey the land, and cause other incumbrances to be placed thereon, and then tie up the money by his so-called garnishment proceeding, and take advantage of the situation thus created to extort money from Green upon a highly fictitious claim, which, if it ever had any merit, had previously been settled and adjusted between the parties. The conduct of Schmitt, the banker, and Schmitt's attorney before, on, and after November 10th indicates this situation beyond possibility of question. But for this fraud and conspiracy on the part of Schmitt, if there was money in the bank to pay Schmitt's check on November 10th whereby said check was in fact payment, the record shows remittance would have been made to Green, and would have cleared and been paid before the closing of the bank. Therefore, conceding that facts exist sufficient to make the delivery of Schmitt's check to Reliance Savings Bank a payment, nevertheless Schmitt, by his fraud and attempted extortion, caused Green to be utterly deprived of any practical benefit from said payment. So far as Schmitt is concerned, under the circumstances of this case, and by virtue of his own fraudulent conduct (even conceding, as a matter of law and as to innocent parties, that Green made the Reliance Savings Bank his agent to receive payment and that such bank as such agent did receive payment), Schmitt will not be heard to say that Green was paid until the money actually reached Green at Davenport, Iowa, which has not yet occurred. It therefore appears that the decision of the learned trial court was entirely correct upon

the facts and circumstances of this case as between respondent, Green, and appellants Schmitt and the Crichtons, regardless of his erroneous view with reference to the matter of creation of agency.

While this is a joint appeal, and all the appellants are proper and even necessary parties to the action, if not to the appeal, nevertheless, as a matter of fact, the controversy between them is to a considerable extent severable. There is one question arising between respondent, Green, and appellant landowners in which the interest of appellant state of South Dakota is only incidental, being the question of whether or not respondent, Green, is entitled to have his mortgage reinstated upon the premises. If it be held that he is so entitled, then another question arises between respondent, Green, and appellant state of South Dakota in which the interest of appellant landowners is only incidental, namely, with reference to the priority between the reinstated mortgage of respondent and the rural credit mortgages of appellant state of South Dakota.

Upon the record before us, it sufficiently and affirmatively appears that respondent, Green, is entitled, as against appellant landowners, to the reinstatement of his mortgage lien, as was held by the learned trial judge. As against appellant state of South Dakota, we think respondent is entitled to have his reinstated mortgage rank as a lien as of its original date and prior to the rural credit mortgages, unless the facts were such that the Schmitt check given on November 10th actually constituted payment to the Reliance Savings Bank as respondent's agent. The inference from the present record would probably be that it did constitute such payment.

The judgment appealed from decrees in substance in favor of respondent and against all the appellants the following relief: First, that the satisfaction of the Green mortgage and the record thereof be canceled and annulled; second, that the Green mortgage be restored and reinstated of record as a valid, subsisting, and outstanding mortgage according to its terms and conditions against the lands therein described; third, that said mortgage so restored constitute a valid and subsisting lien upon the premises as of the date of its original record; fourth, that said mortgage be adjudged prior and superior to the mortgages from appellants Schmitt and the Crichtons to appellant state of South Dakota; fifth, that said mortgage so restored be adjudged a valid lien as against appellants

Crichtons upon the portion of the premises conveyed by Schmitt to Crichton; sixth, that respondent recover his costs of appellants and each of them.

. Upon the record before us, as above pointed out, the net result of the situation is this: Notwithstanding the erroneous view of the trial court upon the question of agency, the judgment is in all respects correct, so far as concerns appellants Schmitt and the Crichtons. It is correct as to appellant state of South Dakota in so far as it cancels the satisfaction and reinstates the Green mortgage, but upon the present record and the fact inferences therefrom it is not correct as to appellant state of South Dakota, in so far as it adjudges the lien of the reinstated mortgage to be valid and subsisting against appellant state of South Dakota as of its original recording date and prior to the lien of the rural credit mortgages. As hereinbefore pointed out, the question of priority between respondent, Green, and appellant state of South Dakota depends on whether or not Reliance Savings Bank, as agent of Green, actually received payment before parting with the satisfaction of the Green mortgage, which in turn depends upon a question of fact appearing in this record only by inference, and which was not a vital or even a material question of fact or law at the time of the trial, in view of the erroneous theory of the trial judge upon the question of whether or not the Reliance Savings Bank ever became the agent of respondent Green.

Under the circumstances, and in view of the severable nature of the controversy between respondent and the respective appellants, we see no need for reversal of the entire judgment, and the order and judgment of this court will therefore be, and it is, as follows:

The judgment, in so far as it is in favor of the respondent and against appellants Schmitt and the Crichtons, is in all things affirmed, and is affirmed in so far as it decrees the cancellation of the satisfaction of respondent's mortgage and the record of such satisfaction, and the restoration and reinstatement of said mortgage and the record thereof as a valid and subsisting lien according to its terms upon the entire premises therein described.

So much of the judgment as decrees respondent's reinstated mortgage to be a lien upon the premises prior to the lien of the

rural credit mortgages of appellant state of South Dakota is reversed, and the cause is remanded, with directions to the trial court to determine, in harmony with the views hereinbefore expressed, whether or not Reliance Savings Bank was paid the amount due respondent, Green, before surrendering the satisfaction of mortgage. For the purpose of making this determination, the trial court is directed to hear such further testimony as respondent, Green, or appellant state of South Dakota may desire to offer on this point, and, having heard such testimony, if any is offered, to make findings and conclusions accordingly, and enter judgment as between respondent, Green, and appellant state of South Dakota, determining the priority of their respective liens in accordance with the facts so to be ascertained and the law as hereinbefore indicated. Respondent, Green, may tax his costs upon this appeal against the appellants Schmitt and the Crichtons. Appellant state of South Dakota, having seen fit to join throughout in the appeal with the other appellants instead of perfecting a separate appeal, will tax no costs.

BROWN, P. J., and POLLEY and BURCH, JJ., concur.

SHERWOOD, J. (dissenting). I cannot agree to that part of the majority opinion which holds the Reliance Savings Bank was the agent of respondent. This record shows that on October 23, 1923, the rural credit board of South Dakota made the Reliance Savings Bank of Reliance, S. D., its agent to pay the Jerry Green mortgage and obtain a satisfaction thereof. Thereafter, and on November 6, 1923, the Reliance Savings Bank and defendant Schmitt, through their conspiracy and fraud, induced him to send his mortgage and satisfaction to the Reliance Savings Bank for payment. The rural credit board was not a party to this fraud; but knowledge of the fraud must be imputed to it through the knowledge of its agent, Reliance Savings Bank. Speaking of this fraud, the majority opinion says:

"It further appears very plainly that appellant Schmitt conspired with Reliance Savings Bank to lead Green to believe that it was necessary to send his release of mortgage to Lyman county, S. D., for collection, and that Schmitt and Reliance Savings Bank fraudulently conspired together to get the release of the Green mortgage in the Reliance Savings Bank to the end that Schmitt

might get both the release of the mortgage and the money to pay the same under the control of himself and his fellow conspirators, procure the satisfaction of the mortgage to be recorded, convey the land, and cause other incumbrances to be placed thereon, and then tie up the money by his so-called garnishment proceeding, and take advantage of the situation thus created to extort money from Green upon a highly fictitious claim."

This so-called agency obtained by fraud, knowledge of which must be imputed to the rural credit board, cannot now be used by them to obtain an interest in this land, either equal or superior to that of respondent.

In Burch v. Odell and Wagner v. Spaeth, cited in the majority opinion, to sustain the proposition of agency, the court in both cases specifically say: "No question of fraud was involved in either case."

And in Burch v. Odell the North Dakota court say at page 795 of the opinion: "In the absence of fraud or bad faith the relation between the plaintiff and the Ruso bank must be held to be that of principal and agent"; clearly indicating they would not have held such appointment an agency if it had been obtained by fraud and deceit. In my view, the lower court was right in holding that the Reliance Savings Bank was not an agent of respondent. The apparent agency of the Reliance Savings Bank was in effect no agency because obtained through conspiracy and fraud.

In my view the case should not be turned on the question of agency, but on the question of fraud, knowledge of which must be imputed to the rural credit board.

The judgment of the lower court should be affirmed.