NORTHWESTERN TRUST COMPANY, Appellant, v. SMITH, Supt. of Banks, et al, Respondents.

(247 N. W. 379.)

(File Nos. 7361, 7409.   Opinion filed March 14, 1933.)

Sutherland, Payne & Linstad, of Pierre, for Appellant.
H. O. Lund, of Colome, for Respondents.

WARREN, J. This is an appeal by the Northwestern Trust Company (substituted for C. H. Dillon), as administrator of the Bartlett Tripp estate, to recover the proceeds of two warrants issued by the defendant school district.

The facts of the case are substantially as follows: The plaintiff was the owner of two warrants of the Colome independent school district. About the 1st of September, 1925, plaintiff forwarded the warrants to the Bi-Metallic Bank of Colome, S. D., with instructions to collect the said warrants and remit the amount due the plaintiff, which was the sum of $4,347.64. The president of the Bi-Metallic Bank presented the warrants to the treasurer of the school district, and received from the treasurer his two checks upon the Tripp County State Bank, a banking corporation also doing business in the city of Colome, S. D., the Bi-Metallic Bank indorsing and surrendering the two warrants therefor. On the same day, September 29, 1925, the Bi-Metallic Bank mailed to the plaintiff its cashier's check in the sum of $4,347.64 as a remittance for the collection of said warrants, but the cashier's check was not paid on account of the suspension of the Bi-Metallic Bank on October 2, 1925.

On the same day that the checks from the treasurer of the defendant school district were received by the Bi-Metallic Bank, they, along with other items, were cleared between the two banks in Colome, S. D., in the usual course of banking done by these two banks. The transaction was made in the usual method of clearance between banks in which the banks exchange the items that each had on the other, and the difference is paid in cash to

make the balance. In this particular clearing transaction were the two checks from the treasurer of the defendant school district drawn on the defendant Tripp County State Bank which the Bi-Metallic Bank presented for payment. Among the items presented by the Tripp County State Bank against the Bi-Metallic Bank was a check for $2,304.18 drawn by the treasurer of the defendant school district on the Bi-Metallic Bank against moneys which that bank had in its hands as matters of collection on tuition warrants. The Bi-Metallic Bank was not the depositary of the school district's funds; the Tripp County State Bank having been designated as such. The balance in the clearing transaction was $866.96, for which the Tripp County State Bank, being the debtor, gave a draft on its correspondent, which was later, the same day, returned and paid in cash.

At the close of the day on October 1, 1925, the last day the Bi-Metallic Bank was open for business, it had on hand in actual cash the sum of $1,047.39. The trial court in its findings of fact found that on September 29, 1925, the defendant Bi-Metallic Bank of Colome, S. D., was insolvent, and had been insolvent for some time prior thereto, although it had conducted its business and was not suspended until October 1, 1925. There is also evidence in the record that the cashier of the Tripp County State Bank had been called into conference and had been told of the financial condition of the Bi-Metallic Bank by its president, and that there was a possibility of the latter bank closing its doors, unless financial assistance was received in the very near future. At the time of the procuring of the checks from the treasurer of the defendant school district, the cashier of the Tripp County State Bank advised Knecht, the president of the Bi-Metallic Bank, that he should take the drafts of the Tripp County State Bank and not to remit through the Bi-Metallic Bank because of its condition.

Plaintiff has brought his action, naming as defendants the superintendent of banks, the Bi-Metallic Bank, the Colome Independent School District, its treasurer individually, the Tripp County State Bank, and its board of trustees; the latter bank having been subsequently taken over by the banking department of the state of South Dakota.

The matter came on for trial before the judge of the circuit court; a jury having been waived by stipulations of the parties.

After hearing the evidence, the court made and filed its findings of fact, substantially as set forth above, and conclusions of law, which conclusions are as follows:

"I. That on September 29th, 1925, said Bi-Metallic Bank became indebted to C. H. Dillon as the predecessor in interest of the plaintiff in the sum of $4,347.64 by reason of having collected the said warrants of the said Dillon. That said bank has paid thereon the sum of $866.96 and $243.64 as set forth in the Findings of Fact; that the plaintiff is entitled to recover as a preferred claim against the assets of said bank the further sum of $180.43, which represents the difference between the actual cash on hand in the bank at the time it closed on October 2nd, 1925, which was $1,047.39, and the amount paid plaintiff as a preferred claim, which was $866.96. That the remainder of said indebtedness, after allowing credit for the foregoing should be paid from the assets of said bank pro rata with the claims of other common creditors of said bank.

"II. That the Tripp County State Bank failed to pay to the Bi-Metallic Bank on September 29th, 1925, a portion of the amount of the checks which the Treasurer of the defendant school district had given in payment of the Dillon warrants, to-wit: the sum of $2,304.18 thereof. That the Bi-Metallic Bank had not the right or authority to accept from the Tripp County State Bank on September 29th, 1925, the check for $2,304.18 which the Treasurer of the defendant school district had given on the former bank, and of this the said Tripp County State Bank was bound to take notice, and accordingly the latter bank did not pay said checks given in settlement of the Dillon warrants to the extent of $2,304.18. That the plaintiff is entitled to recover said sum of $2,304.18 from the Tripp County State Bank, to be paid by the trustees of said bank pro rata with other creditors. That said Tripp County State Bank shall be subrogated to the rights of the plaintiff against the Bi-Metallic Bank so far as the former shall pay to the plaintiff its liability to the plaintiff as set forth above, such subrogation to be without prejudice to the right of the plaintiff to recover against the said Bi-Metallic Bank.

"III. That there is no liability to the plaintiff on the part of the defendant Colome Independent School District No. 24 on account of the transactions set forth in the foregoing Findings; that the said defendant paid in full for the said Dillon warrants.

"IV. That the plaintiff should recover costs from the Bi-Metallic Bank and the Tripp County State Bank, and from their respective successors in interest; and defendant Colome Independent School District No. 24 should recover its costs from the plaintiff."

The trial court by its judgment allowed full recovery against the Bi-Metallic Bank, allowed a partial recovery to the extent of $2,304.18 against the Tripp County State Bank, and denied plaintiff any recovery against the defendant school district. The plaintiff has appealed from that part of the judgment which allowed only a partial recovery against the Tripp County State Bank, and which denied any recovery from the defendant school district.

Pending the appeal of the plaintiff, in the Supreme Court, the Tripp County State Bank perfected its cross-appeal from the judgment in the above-entitled matter from that part of the judgment which allowed plaintiff partial recovery against the Tripp County State Bank to the extent of $2,304.18.

We first consider that part of the judgment by which the circuit court allowed a partial recovery against the defendant Tripp County State Bank to the extent of $2,304.18. It is contended by the appellant, Northwestern Trust Company, that the judgment against the bank should have been for the whole of the proceeds of the Dillon warrants less the cash which the bank paid at the time of the clearing transaction, or the sum of $3,480.68. By its cross-appeal, the Tripp County State Bank has contended that there should be no recovery against it in any amount. We must therefor consider the transaction in its chronological order to arrive at a fair determination of the question presented by these appeals.

The Bi-Metallic Bank received the Dillon warrants, presented them to the treasurer of the defendant school district, and received therefor his two checks for the full amount of the warrants drawn on the Tripp County State Bank; the former bank indorsing and surrendering the warrants. Upon such a statement, we conclude that it is a matter of general law that, where paper is sent to a bank for collection, whether payable at the bank or not, the bank is the agent of the payee or holder, and that payment by the maker is payment to the principal and an absolute discharge of the debt. It is of no consequence, so far as the debtor is concerned, whether the bank accounts for it or misapplies it. 3 R. C. L. § 269. It is

also a general rule of law that, where an agent has paper to collect, he can receive nothing but money in payment, and, when he does accept anything other than cash in payment, he will be liable to his principal for any loss the latter may suffer. This rule is applicable to banks acting as collection agents. 3 R. C. L. 616, § 245.

"If the bank takes the check of the party who is bound to pay the paper, and thereupon surrenders the paper to him, it assumes the responsibility for the check proving good. If it is not paid, the bank is still obliged to pay the amount to the person from whom it received the paper." I Morse, Banks (3rd Ed.) par. 252 quoted in Central Exch. Nat'l Bk. v. First Nat'l Bank (Tex. Civ. App.) 214 S. W. 660, 661. Nat'l Bank of Commerce v. American Exch. Bank, 151 Mo. 320, 52 S. W. 265, 74 Am. St. Rep. 527.

"It is settled law that a collecting agent is without authority to accept for the debt of his principal anything but 'that which the law declares to be a legal tender, or which is by common consent considered and treated as money, and passes as such at par.' * * * The rule applies to a bank receiving commercial paper for collection, and if such bank accepts the check of the party bound to make payment and surrenders the paper, it is responsible to the owner for any resulting loss." Federal Reserve Bank v. Malloy, 264 U. S. 160, 44 S. Ct. 296, 298, 68 L. Ed. 617, 31 A. L. R. 1261. Quoted in Hommerberg v. State Bank of Slayton, 170 Minn. 15, 212 N. W. 16.

But this rule does not prevent the agent from conditionally accepting a check in discharge of the instrument he holds for collection. In Bellevue Bank v. Security Nat. Bank, 168 Iowa, 707, 150 N. W. 1076, 1078, it was held: "The defendant Bank, as the collecting agent, was within its duty in accepting from the maker of the note a check if it had reason to believe the same to be good. The acceptance of such check operated presumptively, however, only as a conditional payment of the note."

The naked act of accepting a check in payment of a note or money demand is presumed to be on condition that the check is good. If the check is dishonored, no payment is effected. Bellevue Bank v. Sec. Nat. Bank, supra; Griffin v. Erskine, 131 Iowa, 444, 109 N. W. 13, 9 Ann. Cas. 1193; Omaha Nat'l Bank v. Brady State Bank, 113 Neb. 711, 204 N. W. 796; Inter-State Nat'l Bank

v. Ringo, 72 Kan. 116, 83 P. 119, 3 L. R. A. (N. S.) 1179, 115 Am. St. Rep. 176; Savings Bank v. Nat'l Bank, 98 Tenn. 337, 39 S. W. 338; Farmers' Bank & Trust Co. v. Newland, 97 Ky. 464, 31 S. W. 38; United States Nat'l Bank v. Shupak, 54 Mont. 542, 172 P. 324. See, also, Green v. Schmitt et al, 57 S. D. 1, 230 N. W. 233; Steinmetz v. Schultz, 59 S. D. 603, 241 N. W. 734; and State ex rel Bollinger v. Solomonson, 60 S. D. 565, 245 N. W. 256, 258.

"Where paper is delivered to a bank, or other agent, for personal collection, where it is presumed that the bank, or other agent, will personally make the collection, as where the paper is made payable at the same bank, or in the same vicinity, or where the bank sends the paper to the bank against which it is drawn, in all such or similar cases, it is generally held that the agent is liable for the acts or omissions of the subagent. * * *" Fanset v. Garden City Bank, 24 S. D. 248, 123 N. W. 686, 688. Quoted in Jensen v. First Nat'l Bank, 51 S. D. 325, 213 N. W. 854.

When a bank is authorized to make a collection and receives therefor a check, such check is payment if the drawer of the check has funds in the bank upon which it is drawn to the amount of the check and if the bank has the money with which to pay the check. Green v. Schmitt, supra. Whether there was money in the Tripp County State Bank with which to pay the check which the Bi-Metallic Bank accepted for the school warrants is a rebuttable inference, but, upon the statement of facts as given to us by the trial court's findings, we believe the defendant school district had to its credit sufficient funds on deposit in the Tripp County State Bank with which to pay the checks if they had been presented in person, and also, we believe, the Tripp County State Bank had sufficient money with which to pay the checks. The transaction was made in the usual course of banking business between banks of the same city in which the banks clear items that they have on each other, and the difference in the clearing transaction is paid in cash in order to make the balance. Our courts take notice of the practice of banks in clearing items between each other, and, if the bank followed the course usually taken by banks under similar circumstances, and if such usage was reasonable, and did not contravene any principle of law, the fact that the bank followed such custom and practice would tend to show that it exercised reasonable care in

making the collection. Luckehe v. First Nat'l Bank, 193 Cal. 184, 223 P. 547. This we believe the Bi-Metallic Bank has done in the instant case, and the same would likewise apply to the Tripp County State Bank, which also followed the course usually practiced by banks in clearing items between each other, and in this case the Tripp County State Bank, in order to protect the Bi-Metallic Bank's principal, the Northwestern Trust Company, suggested that the latter bank remit through the Tripp County State Bank. That the former bank did not do this could hardly shift the negligence, if any, upon the Tripp County State Bank. Why the trial court should arrive at the conclusion that the exchanging of these items with the Bi-Metallic Bank in payment of the checks the Bi-Metallic Bank had for collection was perfectly proper, but questioned the exchanging of the checks for $2,304.18, we are unable to see. Neither can we understand why it was proper for the Bi-Metallic Bank to accept the other items that the Tripp County State Bank presented for payment, which, incidentally, amounted to $1,176.50, but that it was improper for the Tripp County State Bank to include the check for $2,304.18. The appellant, Northwestern Trust Company, contends that, since the bank was insolvent and had been for some time, and also because the Bi-Metallic Bank did not actually have funds on hand with which to pay the checks presented by the clearing transaction, they should be allowed a full recovery also against the Tripp County State Bank, less the amount paid in cash at the time of the clearing transaction, less the payments that have been made as a preferred claim against the former bank and the dividends paid since the bank was taken over by the banking department of the state of South Dakota. With this, we are again of the opinion that it is unfounded. To all appearances the Bi-Metallic Bank was an open and going concern, doing business. It is a known fact that under the banking laws of the state of South Dakota many banks are and have been permitted to operate over a period of time, even though their financial condition might not have been the soundest. Smith, Supt. of Banks, et al, v. McCowan, 60 S. D. 504, 244 N. W. 891.

"If a bank, though insolvent, is still conducting its business, and pays a check of a depositor in the usual course of business, and the depositor has no notice of the insolvency of the bank, the payment is good and the depositor will be protected. It is a matter

of common knowledge that banks and other corporations continue, in many instances, to do their regular and ordinary business for long periods though in a condition of actual insolvency. It surely cannot be said that all payments made in the due course of business in such cases are to be deemed to be made in contemplation of insolvency or with a view to prefer one creditor to another. And the payment of a depositor is not necessarily an unlawful preference, though he withdrew his account because, on account of rumours, he suspected that the bank was insolvent." 3 R. C. L. 646, par. 275.

In the recent case of State ex rel Bollinger v. Solomonson, supra, in passing on the question as to whether or not it is necessary that it be shown that the bank had funds with which to pay the demands against it, we said: "The inference is that a bank open and doing business can and will honor lawful demands against it upon presentation. Such inference, however, is rebuttable. Green v. Schmitt, supra, Steinmetz v. Schultz, 59 S. D. 603, 241 N. W. 734. * * * The acceptance of a check to pay the claim of a bank upon which it is drawn constitutes payment if the drawer has credit to the extent of the check, although the bank does not have funds to the amount of the check. * * *"

This court in the case of Green v. Schmitt, 57 S. D. 1, 230 N. W. 233, 241, referred to above, said: "Whether there was money in the bank to pay the check on Saturday, November 10th, when it was given, does not appear from the record in this case, excepting as it may be inferred prima facie from the fact that Reliance Savings Bank was apparently open for business on that day. This inference is, of course, rebuttable by showing the actual fact, if it was otherwise. * * *" See, also, Smith v. McCowan, supra.

The Bi-Metallic Bank on the 29th day of September, 1925, was open for business, and was a going concern. It had been paying demands upon itself for some time, and continued to do so for two days after the transaction in question took place, even though the trial court in its findings of fact declared "that on September 29th, 1925, the said Bi-Metallic Bank of Colome, South Dakota, was insolvent and had been insolvent for a considerable period prior thereto." Under such a statement, any one who could show that they had checks on the Bi-Metallic Bank which cleared

through the Tripp County State Bank for "a considerable period thereto" could recover from the Tripp County State Bank, if the contentions of the Northwestern Trust Company are to be sustained.

It is therefore the opinion of this court that .the judgment of the circuit court, in so far as that court allowed a partial judgment against the Tripp County State Bank, should be reversed. The cause is remanded to the circuit court, with instructions to modify its conclusions of law and judgment in conformity with the reasoning and opinion set forth above.

■ We come next to a consideration of the plaintiff's second assignment of error, in which it alleges that the trial court erred in denying a recovery against the defendant Colome independent school district, and giving judgment to such school district for the costs against said plaintiff.

The defendant school district had authorized the Bi-Metallic Bank to collect some tuition warrants, which collections amounted to the sum of $2,304.18. The Bi-Metallic Bank was not the designated depositary of the school district. For the purposes of transferring the account to the Tripp County State Bank, which was the designated depositary of the defendant school district, the treasurer of the school district drew a check upon the Bi-Metallic Bank in favor of the Tripp County State Bank, and deposited it to the credit of the school district in the latter bank. The Tripp County State Bank thereby became the agent of the school district in the collection of this check. This check was included in the clearing transaction referred to above. What we said there will likewise apply in the determination of this item.

Checks, drafts, and other bills of exchange are the means of transferring money in adjusting nearly all commercial transactions. Where the Bi-Metallic Bank, as payee of the checks of the treasurer of the school district, accepted from the drawee bank something other than cash and obligations on itself, when the drawer had funds in the drawee bank with which to pay cash if demand therefor had been made, the transaction will be regarded as payment and the drawer discharged. Fed. Reserve Bank v. Malloy, 264 U. S. 160, 44 S. Ct. 296, 68 L. Ed. 617, 31 A. L. R. 1261; Noble v. Doughten, 72 Kan. 336, 83 P. 1048, 3 L. R. A. (N. S.) 1167; Anderson v. Gill, 79 Md. 312, 29 A. 527, 25 L. R.

A. 200, 47 Am. St. Rep. 402; Johnson v. First State Bank, 144 Minn. 363, 175 N. W. 612, 9 A. L. R. 960; Scotts Bluff County v. First Nat'l Bank, 115 Neb. 273, 212 N. W. 617; Fakler v. Levine, 55 N. D. 468, 214 N. W. 275.

It is contended by the plaintiff that the school district obtained an unlawful preference in the assets of the Bi-Metallic Bank by virtue of the transaction wherein the Bi-Metallic Bank accepted from the Tripp County State Bank the check for $2,304.18 which had been drawn by the school district on the Bi-Metallic Bank and deposited in the Tripp County State Bank. However, in this case we believe that the facts cannot support such a contention. The school district knew nothing of the financial condition of the Bi-Metallic Bank, and to all concerned it was an open and going institution, and was receiving deposits and paying demands made upon it. Neither is there any evidence in the finding that this transaction was intended to give the school district an unlawful preference. 3 R. C. L. 646, par. 275, cited above. There is no evidence of fraud or collusion on the part of the officers of the school district and the bank. To hold otherwise, or to hold in support of the contention of the appellant, Northwestern Trust Company, then every one who drew checks on the Bi-Metallic Bank for several months prior to the time of its closing gained an unlawful preference. Smith v. McCowan, 60 S. D. 504, 244 N. W. 891.

In view of the authorities and the law as stated above, we believe the circuit court did not err in denying recovery to the plaintiff against the defendant school district, and it is the order of the court that the judgment in favor of the Colome independent school district be affirmed.

RUDOLPH, P. J., and CAMPBELL, J., concur in result.

POLLEY and ROBERTS, JJ. (dissenting). The trial court was, in our opinion clearly right in holding that the plaintiff was entitled to recover from the Tripp County State Bank the amount of the check for $2,304.18 to be paid by the trustees of such bank. The cashier of the Tripp County State Bank knew that the checks of the treasurer of the defendant school district which the Bi-Metallic Bank presented were the checks given for the warrants which were forwarded to the Bi-Metallic Bank for collection. The

collecting bank did not have authority to accept in lieu of money a claim against itself, and of this fact the Tripp County State Bank was required to take notice. When the Bi-Metallic Bank received the check on itself in clearance, it was in a failing condition, which fact was known to the cashier of the Tripp County State Bank, and did not then nor thereafter have sufficient money to pay the amount of the check. The judgment should be affirmed.